ALDRICH *against* KINNEY.

Aldrich
*v.*
Kinney.

*Although a judgment rendered in one state, by a court having jurisdiction of the cause and the parties, is conclusive and unimpeachable, in every other state in the Union; yet a judgment obtained in another state, against a person, who had no legal notice to appear, and who did not in fact appear, is of no validity.*

*In an action on a judgment rendered in another state, evidence on the part of the defendant, that he had no legal notice of the suit, and did not appear, was held to be admissible, although the record of such judgment stated, that the defendant appeared by his attorney.*

This was an action of debt on a judgment of the supreme judicial court of the state of *Rhode-Island*, holden at *Providence*, in *March*, 1817.

The defendant pleaded, that at the time of the rendition of the judgment, he was, and ever since has been, an inhabitant of *Norwich* in the state of *Connecticut*, and never was an inhabitant of the state of *Rhode-Island*, nor subject or amenable to the laws of that state, nor within the jurisdiction of any of the courts thereof; that the original writ in the action in which said judgment was rendered, was no otherwise served on the defendant than by attaching certain turnpike shares in the *Connecticut & Rhode-Island* turnpike company, which shares did not, at the time of said attachment and judgment, belong to the defendant, and he had no property whatever in the same; that said writ was not read to him, nor was any copy thereof left with him, and he never had any notice of the suit, and that the execution, which issued on said judgment, was never levied upon said shares. The defendant also averred in his plea, that at the time of the date and impetration of said writ, and the commencement of said action, he was not indebted to the plaintiff, and the plaintiff had no cause of action against him. To this plea the plaintiff replied, that said action was duly served on the defendant, according to the laws of the state of *Rhode-Island*, and the defendant had due and legal notice of the same; that after such service, the writ was returned to the court of common pleas for the county of *Providence*, holden at *Providence*, on the fourth *Monday* of *May*, 1816, when and where the defendant, by his attorney, *John B. Snow*, by him duly constituted and appointed, appeared, and pleaded to said cause the general issue therein; that at the term of said court in *December*, 1816, the parties were fully heard, and on such hearing, judgment was, by said

court, rendered against the defendant ; and that the defend- <span>*New-London, July, 1822.*</span> ant, by his said attorney, appealed therefrom to the superior court of that state, holden at *Providence*, on the first *Monday* of *March*, 1817, when and where the defendant, by his said attorney, submitted judgment, &c. The defendant rejoined, that said original writ was not duly and legally served on him, and he had not legal notice thereof; and the defendant did not appear and plead therein, by his attorney, duly and legally constituted ; as the plaintiff in his replication had alleged. On these allegations issue was joined.

*Aldrich v Kinney.*

On the trial of the cause, at *New-London, October* term, 1821, before *Peters*, J., the plaintiff adduced in evidence the record of the judgment from the state of *Rhode-Island.* The defendant offered evidence to shew, that the attorney of record was not authorized, and to prove the truth of the other facts contained in the plea in bar. To the admission of this evidence the plaintiff objected ; and the judge rejected it, on the ground that the judgment was conclusive. He then directed the jury to find a verdict for the plaintiff; which was done accordingly ; and the defendant moved for a new trial.

*Goddard*, in support of the motion, contended, That it was competent for the defendant to shew, that neither the person nor the property of the defendant was within the jurisdiction of the court, on whose judgment this action is founded ; and that being shewn, such judgment was not only not conclusive, but not even *prima facie*, evidence of a debt, or of the matters, which it purports to decide. To give validity to the judgment of any court, it is necessary that it should have jurisdiction of the person, the subject matter and the process; and such jurisdiction is always a proper subject of enquiry in a collateral action. These principles are applicable even to *domestic* judgments ; and, *a fortiori*, to judgments rendered *in another state.* *Slocum* v. *Wheeler* & al. 1 *Conn. Rep.* 429. 449. *The Henrick* and *Maria*, 4 *Rob. Adm. Rep.* 46. (*Phil.* ed.) *Menetone* v. *Gibbons &* al. 3 *Term Rep.* 267. *Buchanan* v. *Rucker*, 9 *East*, 192. *Fisher* v. *Lane &* al. 3 *Wils.* 297. *Buttrick* & ux. v. *Allen*, 8 *Mass. Rep.* 273. *Bissell* v. *Briggs*, 9 *Mass. Rep.* 462. *Jacobs* v. *Hull*, 12 *Mass. Rep.* 25. *Kilbourn* v. *Woodworth*, 5 *Johns. Rep.* 37. *Fenton* v. *Garlick*, 8 *Johns. Rep.* 194. *Pawling* & ux. v. *Wilson* and *Smith*, 13 *Johns. Rep.* 192. *Borden* v. *Fitch*, 15 *Johns. Rep.* 121. *Phelps &* al. v. *Holker*, 1 *Dall.* 261. *Armstrong* v. *Carson's* exrs. 2 *Dall.*

*New-London,*
July,
1822.

Aldrich
*v.*
Kinney.

302. *Kibbe* v. *Kibbe, Kirb.* 119  *Osborn* v. *Lloyd,* 1 *Root* 301. *Stoyell* v. *Westcott,* 3 *Day,* 349. Recognized also in *Mills* v. *Duryee,* 7 *Cranch* 481. *Hampton* v. *McConnel,* 3 *Wheat.* 234. *Smith* v. *Rhoades,* 1 *Day* 168.

*Daggett* and *J. Williams,* contra, contended, That by the constitution and laws of the *United States,* the judgment in question was conclusive ; and that no plea could be admitted, denying the judgment of another state, where from the record it appears, that there was an *appearance* of the defendant, and that he had, or might have had, a fair trial. *Const. U. S. art.* 4. *sect.* 1. 2 *Laws U. S.* 102, 3. (ed. 1815.) *Mills* v. *Duryee,* 7 *Cranch* 481. *Hampton* v. *McConnel,* 3 *Wheat.* 234. *Armstrong* v. *Carson's* exrs. 2 *Dall.* 302. *Bissell* v. *Briggs,* 9 *Mass. Rep.* 452. A party's submitting to the jurisdiction of the court, is equivalent to his being duly served with process. In that case, the objection that the court has not jurisdiction of the person, does not exist.

Hosmer, Ch. J.   Foreign judgments are *prima facie* evidence of debt, and to be presumed just, until the contrary is proved ; but if they are shown to be unjust or irregular, a suit upon them will not be sustained. *Walker* v. *Witter, Doug.* 1.

The judgment of a court in a sister state, is not to be placed on the footing of a foreign judgment, but has all the validity, provided, by the constitution of the *United States.* The first section of the fourth article of that instrument declares, " that full faith and credit shall be given, in each state, to the public acts, records, and judicial proceedings of every other state ; and the congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." By the above terms of the constitution, complete and plenary provision was made, giving to judgments *duly* rendered in either state, conclusive and unimpeachable validity, in all the states. If by the expression, " full faith and credit," it was only intended, to place the judgments *duly* rendered in the respective states, on the same foundation with foreign judgments, where the common law had placed them, the enactment would be idle, and beneath the valuable instrument containing it. From the political connexion between the states, and the principles of courtesy, and mutual confidence, applicable to the friendly

relation subsisting between them, it is reasonable to infer, that more respect was intended to be paid to the adjudications of their courts, than to those of foreign nations. The result to which I have come, in the case before the court, renders a particular discussion of this point unnecessary ; and equally so has it been made, by the harmonious opinions of several respectable judiciaries, and more particularly, by the adjudications of the supreme court of the *United States*, on the matter in question. That a judgment duly rendered before the courts of one of the *United States*, is conclusive in another, was adjudged, by the circuit court of the *United States*, in the case of *Armstrong* v. *Carson's* executors, 2 *Dallas* 302. To the same effect were the decisions of the supreme court of the *United States*, in *Mills* v. *Duryee*, 7 *Cranch* 481. and in *Hampton* v. *McConnel*, 3 *Wheaton* 234. Similar determinations were made, by the supreme court of *Massachusetts*, in *Bissell* v. *Briggs*, 9 *Mass. Rep.* 462., and in *Jacobs* v. *Hull*, 12 *Mass. Rep.* 25. In *North Carolina*, *South Carolina*, and *New-Jersey*, judgments to the same effect have been rendered ; (*Wade* v. *Wade, Cam. & Nor.* 486. *Coleman* ads. *Guardian of Negro Ben*, 2 *Bay* 485. *Curtis* v. *Gibbs*, 1 *Penn.* 399.) and a like adjudication was had, by the supreme court of the state of *New York*, in the case of *Andrews* v. *Montgomery*, 19 *Johns. Rep.* 162. ; and similar determinations were made by the superior court of this state, in *Kibbe* v. *Kibbe*, *Kirby* 124. and *Smith* v. *Rhoades*, 1 *Day* 168. Admitting, as I do most fully, that a judgment rendered in a sister state, by a court which has jurisdiction of the subject matter and *parties*, is conclusive and unimpeachable ; I am equally clear that where the defendant neither appeared, nor had legal notice to appear, a judgment against him is invalid, and ought not to be enforced. So far as my knowledge extends, no decision has been had, giving validity to a judgment under the circumstances last mentioned. The cases of *Mills* v. *Duryee*, 7 *Cranch* 481. and *Hampton* v. *McConnell*, 3 *Wheaton* 234. have no relevancy to the point under discussion. In both these cases, the defendants were within the jurisdiction of the courts, whose judgments were questioned ; and having had notice to appear, they in fact appeared, and made defence. The courts did not, nor could they, express an opinion on the present point of enquiry, unless they travelled out of the record. In *Hitchcock* v. *Aicken*, 1 *Caines* 460. the Judges *Livingston* and *Thompson*, after having admitted the

*New-London,*<br>*July,*<br>1822.<br><br>Aldrich<br>*v.*<br>Kinney.

conclusiveness of judgments, when duly rendered, expressed decisive opinions on the point now under discussion. Speaking of determinations, without personal summons or arrest, it was said, by *Livingston*, J.; "Perhaps we possess the power, and I think we do, in extraordinary cases, and where it is manifest the proceedings have been *ex parte*, of considering them as exceptions to the general law, and as not contemplated by the constitution. Now, no violence is done to my understanding of this article (in the constitution) in saying, that it does not embrace a judgment, which has been rendered against a party, to whom no opportunity was offered of contesting his adversary's demand, and who, instead of being defended by himself, or by counsel of his own choice, had no other representative than an old blanket, or a log of wood. A sentence thus determined, in defiance of the maxim "*audi alteram partem*," deserves not the name of a judgment." "I think, (said *Thompson*, J.) the rule laid down, by the court, in the case of *Kibbe* v. *Kibbe*, above cited, is founded in justice and good sense; that the judgments of courts in sister states, ought to receive full credence, *where both parties were within the jurisdiction of the court, at the time of commencing the suit, and were duly served with process, and had, or might have had, a fair trial of the cause.*" In *Kilbourn* v. *Woodworth*, 5 *Johns. Rep.* 41., which was an action of debt on a judgment recovered against a person in the state of *Massachusetts*, domiciliated in the state of *New-York*, it was adjudged, that the suit could not be sustained. "To bind a defendant personally by a judgment, (said one of the judges) when he was never personally summoned, nor had notice of the proceeding, would be contrary to the first principles of justice." This determination has been followed, by similar decisions, in the same court, in *Robinson* v. *Ward*, 3 *Johns. Rep.* 86. *Fenton* v. *Garlick*, 8 *Johns. Rep.* 194. *Pawling* v. *Wilson*, 13 *Johns. Rep.* 192. and *Borden* v. *Fitch*, 15 *Johns. Rep.* 121. In the state of *Massachusetts*, the subject underwent a very able discussion, by the late learned Ch. J. *Parsons*, in *Bissell* v. *Briggs*, 9 *Mass. Rep.* 462. "Neither our own statute, (said he) nor the federal constitution, nor the act of congress, had any intention of enlarging, restraining, or in any manner operating upon the jurisdiction of the legislatures, or of the courts of any of the *United States*. The jurisdiction remains as it was before, and the public acts, records, and judicial proceedings, contemplated, and to which full faith

and credit are to be given, *are such as were within the jurisdic-*
*tion of the state* whence they shall be taken. Whenever,
therefore, a record of a judgment of any court of any state, is
produced as conclusive evidence, the jurisdiction of the court
rendering it, is open to enquiry; and if it should appear, that
the court had no jurisdiction in the case, *no faith or credit
whatever*, will be given to the judgment. In order to entitle
the judgment rendered in any court of the *United States* to the
full faith and credit mentioned in the federal constitution, the
court must have had jurisdiction, not only of the cause, but *of
the parties*." In this opinion the other judges concurred;
and the decision has been followed by a similar determina-
tion in *Jacobs* v. *Hull, 12 Mass. Rep.* 25. In the state of *Con-
necticut*, judgment to the same effect, was given by the superi-
or court, in *Kibbe* v. *Kibbe, Kirby* 124. succeeded by the case
of *Smith* v. *Rhodes, 1 Day* 186. in the adjudication of which,
the same point, although not expressly adjudged, is clearly im-
plied.

These uniform and concurring opinions of the most respec-
table and learned judges, are entitled to the highest deference.
The principle involved in them is fully sanctioned, by the de-
terminations in *Westminster-Hall.* In *Fisher* v. *Lane, 3 Wils.*
197. it was said, by Lord Ch. J. *De Grey*, when speaking of
the supposed default of a Mrs. *Fisher*, that "she made no de-
fault, for it appears she *never was summoned or had notice*,
which is contrary to the first principles of justice." And in
*Buchanan* v. *Rucker, 9 East,* 192. the court adjudged, that the
law will not raise a promise upon a judgment obtained by de-
fault, against a person in one of the colonies, who was summon-
ed, only by nailing a copy of the declaration on the court-
house door.

Independent of decisions, on the foundation of *principle* on-
ly, I can entertain no doubt, relative to the construction of
the constitution of the *United States.* In expounding this in-
strument, adherence must not be had to the letter, in opposi-
tion to the reason and spirit of the enactment; and hence, to
effectuate the object intended, it is even proper to deviate
from the usual sense of the words. Where they admit of
different intendments, that must be selected, which is most
consonant to the object in view. Every interpretation, which
leads to an absurdity, ought to be avoided; and that is prop-
erly denominated absurd, which is morally impossible, or so
contrary to reason, that it cannot be attributed to a man in

*New-London,*
July,
1822.

Aldrich
*v.*
Kinney.

his right senses. " When rights are infringed, (said Ch. J. *Marshall*) while fundamental principles are overthrown, the legislative intention must be expressed, with irresistible clearness, to induce a court of justice to suppose a design to effect such objects." The words " full faith and credit shall be given, in each state, to the records and judicial proceedings of every other state," do not comprise that unquestionably clear and definite expression of intention, which precludes construction. The most plenary faith and credit, undoubtedly, must be given ; but the sole difficulty consists, in precisely ascertaining the subject of this confidence. What is intended by " the records and judicial proceedings of any other state ?" These words are sufficiently comprehensive, to embrace every judgment *in fact ;* and on the other hand, they may rationally be satisfied, by a limitation to such judgments only, as are duly rendered, by a court of competent jurisdiction, against those who appeared to defend, or who were legally notified to appear. To adopt the former construction, were unreasonable and absurd. A more preposterous proposition cannot be advanced , one more contrary to reason and justice ; more injurious to the absolute rights of man, or to fundamental principle ; than that a person shall be invincibly bound, by a judgment, obtained against him, without notice. *Audi alteram partem*, is a maxim equally just and indisputable ; and when from this acknowledged principle there is a departure ; if estate is thereby subjected to an *ex parte* judgment, the right of property is violated ; and if the body is plunged in a prison, the more important right of personal liberty, is destroyed. It cannot reasonably be presumed, that it was intended, by the constitution of the *United States*, to effectuate such glaring injustice ; nor is there any reason to believe it derived from the phraseology of that valuable instrument. To the expression " the records and judicial proceedings," annex the just and reasonable limitation before-mentioned, that they are such, and such only, as are duly rendered, by a court of competent jurisdiction, against those who appeared to defend, or who were legally notified to appear : and while the absurdity of a more comprehensive provision is avoided, there is scarcely a departure from the popular meaning of the words. The qualification alluded to, is a necessary *subintelligitur* to reach the just meaning of the constitution, and avoid construction, too unreasonable and oppressive for a moment to be admitted.

No sufficient objection arises from the expression in the record, that the defendant *appeared by his attorney.* The attention of the court is seldom, if ever, called to the enquiry, unless specially directed to it, whether a person claiming to be the attorney of the party, is really such ; and the record, by the management of the plaintiff, need never be destitute of this affirmation. In *Robson* v. *Eaton,* 1 *Term Rep.* 62. Lord *Mansfield* permitted the defendant to show, that the person, declared in the record in a former case to be his attorney, was not his attorney. " The record of the common pleas (said he) amounts to no more than this ; that the attorney prosecuted the suit in the plaintiff's name."

In conclusion, I am unhesitatingly of opinion, that the testimony offered by the defendant, in this case, should have been received. So far as relates to the property, said to be attached in the state of *Rhode-Island,* the proceeding was *in rem ;* (*Phelps* v. *Holker,* 1 *Dall.* 261. *Kilbourn* v. *Woodworth,* 5 *Johns. Rep.* 37. *Pawling* & al. v. *Wilson* & al. 13 *Johns. Rep.* 192.) but, as against the defendant, if he was not notified to appear, and did not appear and defend, the judgment rendered against him is of no validity.

The other Judges were of the same opinion.

New trial to be granted.