By the Court:
 

 Harrington,
 
 Justice.
 

 The demurrer in this case brings into question the validity and effect of a judgment recovered in the "State of Pennsylvania, against a citizen and resident of this State, when made the foundation of a suit here for the purpose of enforcing the same. This question has often been considered in the several State courts, and courts of the United States, with somewhat different results. It is obviously one of great importance in principle, and one which must often arise in the intimate political and commercial relations subsisting among the several States of the Union.
 

 Independently of the constitution and laws of the United States, it is not disputed that the judgments of the several States would be regarded only in the light of foreign judgments by the tribunals of any other State; and would be, at most, only prima facie evidence of the
 
 *524
 
 debt or promise. The merits would be fully open to examination on a plea of the general issue, which would be nil debet or non-assump-sit, and not nul tiel record.
 

 But the constitution of the United States
 
 {Art.
 
 4,
 
 sec.
 
 1,) requires that “full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.” By the act of May 26th, 1790, (ch. 11,) Congress prescribed the mode of authenticating records; and declared that they “shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from whence the said records are or shall be taken.”
 

 This would seem to be conclusive on the question now before us; but a difficulty still remains, one which has been often and ably discussed, and upon which there is a contrariety of opinion, if not a conflict of decisions. What shall be considered as a judicial proceeding within the meaning of the constitution! Shall every thing that comes duly authenticated as a judgment have the “full faith and credit” ofa domestic judgment, without regard to the authority which gave it, or the proceedings by which it was obtained? Shall no want of jurisdiction in the court' — no defect of notice to the party, though apparent on the record itself, prevent its having the full faith and unquestionable effect of a judgment? And shall the defendant be es-topped from averring these matters against the record? On the one hand it is contended that full faith and credit must be given in each State to the judgments of every other without any inquiry further than to know if such judgment has been rendered; and that the same effect shall be given to it here as in the Stale where it was rendered. On the other hand, it is urged, that the faith and credit required by the constitution are to be given only to the judgments of a competent tribunal, having jurisdiction of the subject and the parties; as none other can be a judgment consistently with the first principles of justice and the rights of parties: and, therefore, that the record may be controverted as to the essentials of jurisdiction. The latter opinion seems to be belter supported by authority, and more consonant with principle. Every court must feci a repugnance to holding as conclusive and incontrovertible, a judgment recovered in another State against one who had no notice of the suit, who made no defence, and had no opportunity of making defence. It is against
 
 *525
 
 the first principles of justice to condemn any one unheard — to render judgment where there are in truth no parties. Hence, almost all the Stqte courts, in consideringthis question, have taken the ground, that this essential pre-requisite of jurisdiction in the court, and notice to or appearance of the defendant, must appear; otherwise, the judgment is not such a judicial proceeding as the constitution accredits, and is not entitled to any respect whatever. “The want of jurisdiction makes it utterly void and unavailable for any purpose,” and this “is a matter that may always be set up against a judgment.” (Per Thompson, chief justice, in
 
 Borden
 
 vs.
 
 Fitch,
 
 15
 
 Johns. Rep.
 
 121, 141.) The jurisdiction of the courts rendering them is subject to inquiry on the general issue. (Per Parsons, chief justice, in
 
 Bissel
 
 vs.
 
 Briggs,
 
 9
 
 Mass. Rep.
 
 402-8-9.) The judgment is to have full faith and credit, and conclude every thing over which the court had jurisdiction, which may be inquired into, (Per Parker, chief justice, in
 
 Hall
 
 vs.
 
 Williams,
 
 6
 
 Pick.
 
 232,241.) In
 
 Borden
 
 vs.
 
 Fitch,
 
 it was decided, that a judgment rendered in another State against a defendant who never appeared, and had no notice of the proceedings, is
 
 void.
 
 And this, though the judgment record stated that the defendant had been duly notified to appear. In
 
 Shumway
 
 vs.
 
 Stillman,
 
 (4
 
 Cowen,
 
 292,) it was held that the defendant might plead
 
 against the record
 
 that he had no notice, and did not appear. And in a case between the same parties, reported in 6
 
 Wend.
 
 447, it was held, that though it appeared by the record that the defendant appeared by attorney he might deny the fact, or dispute the attorney’s authority. The same point was ruled in
 
 Aldrich
 
 vs.
 
 Kenny,
 
 (4
 
 Conn. Rep.
 
 380;) and, in
 
 Starbuck
 
 vs.
 
 Murray,
 
 (5
 
 Wend.
 
 148,) the court, with great force and conclusiveness, maintains the position, that the defendant may show a want of notice, and that he did not appear to the suit, although in the judgment record it is averred that he did appear. See also
 
 Hitchcock
 
 vs.
 
 Aicken,
 
 1
 
 Caines’ Rep.
 
 460;
 
 Thurbur
 
 vs.
 
 Blackburn,
 
 1
 
 JV. H. Rep. 246; Com.
 
 vs.
 
 Green,
 
 17
 
 Mass. Rep.
 
 544;
 
 Benton
 
 vs.
 
 Burgot,
 
 10
 
 Serg.
 
 &
 
 Rawle,
 
 242;
 
 Killburn
 
 vs.
 
 Woodworth, 5 Johns. Rep.
 
 37;
 
 Cunningham
 
 vs.
 
 Buckingham,
 
 1
 
 Ham. Ohio Rep.
 
 264;
 
 Hoxie
 
 vs.
 
 Wright, 2 Verm. Rep.
 
 263;
 
 Pennington’s Rep.
 
 405;
 
 Hardin’s Rep.
 
 413; 3
 
 Story’s Com.
 
 183; 1
 
 Kent’s Com.
 
 261,
 
 n. b.
 

 The cases which are supposed to conflict with these decisions of the State courts are
 
 Mills
 
 vs.
 
 Duryee,
 
 (7
 
 Cranch,
 
 481;)
 
 Hampden
 
 vs.
 
 M‘Connel,
 
 (3
 
 Wheat.
 
 234;)
 
 Green
 
 vs.
 
 Sarmiento,
 
 (1
 
 Pet. C. C. Rep.
 
 74,) and
 
 Field
 
 vs.
 
 Gibbs, (Ibid
 
 155.) The leading case is that of
 
 *526
 

 Mills
 
 vs.
 
 Duryee
 
 noticed in almost all the other cases, and distinguished on the broad ground that the defendant had full notice of the suit, and appeared and gave bail. It may, therefore, though general in terms, have been intended only
 
 to
 
 decide that
 
 in such a case
 
 the judgment is incontrovertible, and no plea can be allowed but the plea of nul tiel record. Chief Justice Thompson, of New York (now of the Supreme Court,) so restricts it in
 
 Borden
 
 vs.
 
 Fitch;
 
 and he remarks, that Mr. Justice Johnson, who dissented from the rest of the court, evidently understood the court as going only that length. And Judge Story, who delivered the opinion in
 
 Mills
 
 vs.
 
 Duryee,
 
 qualifies it in his commentaries on the Constitution by the remark, that although that case puts these judgments on the same footing as domestic judgments, “this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given to pronounce it, or the right of the State itself to exercise authority over the persons or the subject matter.” (3
 
 Story’s Com.
 
 183.)
 

 The great leading case therefore in opposition to the numerous decisions of the State courts is not necessarily in conflict with them; and the subsequent cases of
 
 Hampden
 
 vs.
 
 M‘Connel,
 
 and
 
 Green
 
 vs.
 
 Sarmiento,
 
 are like it. In the last case the record showed that the defendant was served with process and appeared to the action; these facts are not stated in the former, but the chief justice said it was precisely the same case with
 
 Mills
 
 vs.
 
 Duryee,
 
 and a note to the report says: “the question is still open in this court whether a special plea of fraud might not be pleaded, or a plea to the jurisdiction ofj the court in which the judgment was obtained.” (3
 
 Wheat Rep.
 
 234.)l The only remaining case is that of
 
 Field vs. Gibbs,
 
 in which the Cir-I cuit Court for the New Jersey district, refused to let the defendant! plead against the record that he was not served with process, and! did not appear in the cause, or authorize any one to appear for him;! a decision which is in conflict with many of the decisions of thel State courts. I
 

 I prefer following the latter, especially since I find the loading case in the Federal courts will admit of a qualification which harmonizes it with most of these, and that it has been so qualified by very high judicial authority, i would give full faith and credit to the judgment of a sister State, and the same effect to it as to a domestic judgment, if the jurisdiction which rendered it be not impeached, and it be shown that the party defendant had notice, or had an opportunity of defence, but without these pre-requisites I do not think the con
 
 *527
 
 stitution places the judgment of a foreign court upon the high and unimpeachable ground contended for in this case. I am supported in this opinion by an array of authorities from the State courts that must be conclusive, unless they are directly overruled by the Supreme Court. These decisions place such judgments in the rank of domestic judgments, and give them the same effect, only where the court rendering them had jurisdiction of the person and of the subject matter; either of which inay be denied by plea, and the judgment record is not conclusive on these points. To hold the record conclusive of the jurisdiction would be to give up the important qualification upon which it depends for its validity. The judgment has no force without the jurisdiction, which the defendant may deny and put in issue by his plea; and, until this issue is settled in favor of the record, it has no credit
 
 as
 
 a record; when so settled, it is conclusive, and the court is bound to give it the same faith, credit and effect of one of its own judgments. The merits are never open to inquiry; the record is never controverted as a record; but the essentials of jurisdiction may be put in issue by a special plea, and may be disproved though stated on the judgment record, which as to this matter is no estoppel.
 

 If this view be correct, the replication of the plaintiff to the special plea in this case is bad. I regard that plea as sufficiently covering the whole ground, and denying the appearance in any form. It al-ledges that this defendant was not served with any process in and had no notice of the said suit, and did not appear to or in the same either in person, or by an attorney or agent by him authorized. Whether the record of the District Court shows an appearance or not, the defendant is not estopped to deny it; and the plaintiff was bound to take issue on the plea. It is doubtful however, whether this record shows any appearance. The capias was against two, and the return is “C. C. and B. B,” which may be cepi corpus and jail bond, or cepi corpora and bail bonds. It is apparent, however, from the subsequent proceedings, that Jehu Clark was not arrested, and did not appear personally. Thomas Clark put in special bail for himself alone, after obtaining a rule to show; cause why
 
 he
 
 should -not be discharged on common bail. There is no evidence that he undertook to appear for both defendants other than the facts that they were’ sued as partners, and that Mr. Budd put in a general plea, and is styled “attorney for
 
 defendants.”
 
 These are matters which might ifford prima facie evidence of an appearance by this defendant, or
 
 *528
 
 in his behalf, but they are not conclusive, and he has a right, on the principles before stated, to controvert them by plea.
 

 Wales,
 
 for plaintiff.
 

 M. W.
 
 aud
 
 j9. M. Bates,
 
 for defendant.
 

 The Chief Justice concurred.
 

 Judge Layton was absent.
 

 Judgment for the defendant on the demurrer,