Sanford, J.
The original suit in which the Massachusetts judgment was rendered, was commenced by the attachment of' *111 the defendant’s property found within the jurisdiction of the court, and by the service of the process upon his person; and so far . s concerns the property attached and its appropriation toward the payment of the plaintiff’s debt, the validity of that judgment, and its sufficiency to justify that appropriation, are not denied. Bik it is claimed by the appellees that, as against the defendant’s person- and his property in this state, that judgment is invalid and ought not to be enforced.
It seems now to be generally conceded that the records and judicial proceedings referred to in the fourth article of the federal constitution, are those only to which the defendant has been made a party by personal service of the process, or has become such by his voluntary appearance in the court. Without such service or appearance, the court obtains no jurisdiction of the defendant’s person. As to him, its proceedings are ex parte, its record is no record, and its judgment is, in another state at any rate, entitled to no “ faith or credit,” and ought to have no “ effect.” And the right of the party against whom such judgment is sought to be enforced, to show such want of jurisdiction, is also generally conceded. Notice of the institution or pendency of the suit, or an appearance, which presupposes notice, is an indispensable pre-requisite to the rendition of any judgment -which the courts of another state are, under the constitution and laws of the United States, bound to recognize as conclusive on the defendant, and accordingly enforce. Kibbe v. Kibbe, Kirby, *119. Aldrich v. Kinney, 4 Conn., 380. [ *136 ] Denison v. Hyde, 6 id., 516. Wood v. Watkinson, 17 id., 500. Borden v. Fitch, 15 Johns., 141. Noyes v. Butler, 6 Barb., 616. Starbuck v. Murray, 5 Wend., 148. Dobson v. Pearce, 2 Kern., 156. Pendleton v. Weed, 17 N. York, 73. M'Elmoyle v. Cohen, 13 Pet., 324. Bissell v. Briggs, 9 Mass., 462.
In the case before us service of the process was made in fact upon the person of the defendant in the suit, but he was then insane—incapable of transacting ordinary business—and “ had no adequate understanding of his rights and duties as a party to a cause in court.” He did not appear, no guardian was appointed for him, and no one appeared in his behalf. Of what avail could be the service of legal process upon the person of such an individual ? Like service of legal process upon an infant three years old, or upon an idiot a nativitate, it was but an idle ceremony, which, as it conveyed to the individual no adequate idea of its import or effect, ought in reason to have imposed upon him no obligation, and conferred no jurisdiction on the court.
*112 But if the judgment was not impeachable at law, >a court of equity-would have restrained the appellants from its enforcement. The appellants knew, or at any rate are chargeable with knowledge, of the decedent’s insanity and incapacity, as well as of his abundant property in this state, and of his subjection here to the guardianship of a conservator ; for whatever is sufficient to put a party upon inquiry, is, in equity, sufficient to charge him with notice of the facts, which due inquiry would have elicited; and the appellants had made to the decedent at least three distinct sales of personal property of considerable value upon credit; their debt of nearly nine hundred dollars had been due and remained unpaid for an entire year before the commencement of their suit; and at that time they knew that the decedent had a conservator, and was claimed to be insane. These are facts quite sufficient to put the appellants upon inquir3r, and, indeed, it is almost as difficult to resist the conclusion that they had in fact ascertained the truth found by the auditor in relation to the incapacity and pecuniaiy ability of the decedent, as it [ *137 ] is to *avoid the application of the principle alluded to. It is unnecessary to pronounce the procurement of the original judgment fraudulent. It is enough that it was taken for fifty dollars more than was then justly due to the appellants, whether by fraud, accident or mistake, is immaterial.
The attempt to enforce such a judgment by suit, knowing the circumstances under which it w'as obtained, was inequitable. If, as the appellants claim, that judgment was one by which the decedent was conclusively bound at law, a case was presented for the application of the general rule, cited and approved by Hinman, J., in giving the opinion of this court in the case of Pearce v. Olney, 20 Conn., 554, that “ equity will interfere to restrain the use of an advantage gained in a court of ordinary jurisdiction, which must necessarily make that court an instrument of injustice, in all cases when such advantage has been gained by the fraud, accident or mistake of the other party.” See also Carrington v. Holabird, 17 Conn., 530. Truly v. Warner, 5 How., 141, 2 Story Eq. Jur., sec. 887, and 2 Sw. Dig., 138.
As therefore a court of equity would have enjoined against the prosecution of the suit upon the Massachusetts judgment, and as commissioners, in regard to the allowance and rejection of claims against insolvent estates of deceased persons, exercise, in effect, the powers, and apply the principles, which govern courts of equity as well as courts of law, the judgment, as a ground of claim in favor of the appellants, was proper!jr rejected.
*113 But equity affords its aid only upon the terms and to the extent of doing exact justice between the parties. While therefore, for the reasons suggested, it would restrain the enforcement of the judgment, it would require the payment by the judgment debtor of the debt justly due from him to the creditor. And in regard to that, it is found by the auditor, that, at the time the original debt was contracted, the decedent, in all the transactions between him and the appellants upon which their account is founded, was able to understand and did understand the contracts which he made, that the property was sold to him at fair prices, and that he had *the benefit of it [ *138 ] all, and that the account is justly due to the appellants. Justice, therefore, requires that the original account and interest, deducting therefrom the net proceeds of the property attached at New Bedford, and the fifty dollai’s paid after the commencement of the original suit and before the judgment was rendered, should be allowed to the appellants, but that the judgment and the costs of the suit thereon should be rejected ; and in this we think the justice and the law of the case coincide.
The superior court therefore should be advised, that the claim of the appellants for the amount of their judgment against the decedent, James Ives, and the costs of their suit thereon, ought to be rejected, but that the amount due on their account as found by the auditor, to wit, the sum of $909.35, with additional interest, amounting in all to $943.70, ought to be allowed to the appellants against the estate of said Ives.
In this opinion the other judges concurred.