[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 11141
The defendant Theresa B. Kundrath has been a patient at the plaintiff's convalescent home since March, 1989. The defendant, Michael Kundrath, is Mrs. Kundrath's adult son. (Reference to "the defendant" shall refer to Mr. Kundrath.) Upon Mrs. Kundrath's entry into Southport Manor in March, 1989, Michael Kundrath signed a written guaranty of payment for his mother's charges at Southport Manor, including room and board and other charges. Mrs. Kundrath's assets were liquidated in order to pay for the charges which she incurred at Southport Manor as a private pay patient. In the fall of 1990, it appeared that Mrs. Kundrath's assets were soon to be exhausted and employees of the plaintiff urged Mr. Kundrath to file an application for Title XIX (Medicaid) assistance with the Department of Income Maintenance ("DIM").
Mr. Kundrath's first Title XIX application was filed in November and denied in December as incomplete. A second Title XIX application prepared and filed by Mr. Kundrath's attorney was denied in March 1991 because of incomplete information. Finally in September, 1991, DIM approved Mrs. Kundrath for Title XIX assistance retroactive to March, 1991. As a result, all of Mrs. Kundrath's charges at Southport Manor from March, 1991 forward have been paid by DIM. However, neither of the defendants have made any payment against the balance due for the charges from November, 1990 through February 1991.
In July, 1991 plaintiff Southport Manor brought this action against both Kundraths seeking judgment for the unpaid charges of Theresa Kundrath together with interest and attorneys' fees. The plaintiff contends that the total balance due including interest and attorneys' fees was $33,749.24 as of the date of trial in this action. The defendant Michael Kundrath contends that any balance owed the plaintiff would be paid by Theresa Kundrath's monthly Social Security payments, which are applied to the unpaid balance, and this suit is therefore unnecessary. He also filed two special defenses. The first special defense alleges that the plaintiff breached the contract between the parties by failing to assist Michael Kundrath in applying for Title XIX assistance. The second special defense alleges that the contract between the parties is unenforceable because it violated the public policy of the state of Connecticut as set forth in a statute enacted after the contract was entered into. CT Page 11142
At the time when this action was brought in July 1991, Theresa Kundrath was still unapproved for Title XIX assistance and the balance due the plaintiff including interest and legal fees was over $60,000. No payment had been made against the balance since November, 1990. When Mrs. Kundrath was approved for Title XIX assistance in September, 1991, Southport Manor reversed her monthly private pay charges of approximately $5,000 back to March and accepted payment from DIM at the lower Title XIX reimbursement rate. This caused a reduction in the balance due to approximately $39,000.
Also beginning in September, 1991, Southport Manor began receiving Mrs. Kundrath's monthly Social Security checks and credited each check received against the room and board portion of her balance due. Southport Manor had been trying to obtain these checks from Michael Kundrath without success. In July, 1991, however, a conservator was appointed for Mrs. Kundrath, who was found to be incapable, and the plaintiff reached agreement with the conservator to forward the checks to Southport Manor to be applied to her outstanding balance.
No new charges for room and board or ancillary services were incurred for Mrs. Kundrath after March 1, 1991, when she became eligible for Title XIX assistance. The plaintiff continued, however, to charge her account for 1% interest per month on the unpaid balance and for the legal fees incurred by the plaintiff in filing and pressing this suit to judgment.
The written financial agreement with the plaintiff, signed by Michael Kundrath as both "Responsible Party" and "Guarantor," provided in paragraph 3:
 Payments are due no later than the fifth day of each month and shall become delinquent on the tenth day of the month. Accounts thirty days delinquent shall bear interest at the maximum legal rate of 1% per month. Should the account be referred to an attorney for collection, the undersigned agrees to pay reasonable attorney's fees, collection costs, and other costs of litigation.
Of the $33,749.24 claimed to be due as of the date of trial, interest was $9,619.41 and legal fees were $20,980.51. The remaining amount, $3,149.32, represents the unpaid balance for CT Page 11143 room and board and ancillary services prior to March, 1991.
The defendant Michael Kundrath contends that the plaintiff has failed to sustain its burden of proof with respect to damages because it has failed to account for the future monthly Social Security payments which plaintiff will receive. Plaintiff has responded that at such time as the debt or judgment is paid, it will remit the checks to Mrs. Kundrath's conservator.
In refusing to pay his mother's arrearage due the plaintiff, Mr. Kundrath has relied on the payment of the monthly Social Security checks to extinguish the debt over time. He has wanted Southport Manor to forebear from suit and wait until the monthly Social Security payments eventually pay off the balance due. This facile position ignores, however, the express terms of the financial agreement, signed by Mr. Kundrath as Guarantor, which provides for payment of monthly room and board "in advance" and which further provides for interest and reasonable attorney's fees. The court finds that the defendants failed to pay the balance due the plaintiff for services rendered to Mrs. Kundrath prior to her becoming eligible for Title XIX assistance. Both defendants breached the terms of the financial agreement. The court finds for the plaintiff against Michael Kundrath on the first count of the complaint.
In his first special defense, Michael Kundrath contends that the plaintiff breached the financial agreement by failing to assist him with respect to the Title XIX applications for his mother. Paragraph 5 of this agreement provides that the plaintiff "shall assist Patient and Responsible Party in filing applications for government aid." The first special defense alleges three different ways in which Mr. Kundrath alleges that the plaintiff breached this promise. At trial, however, he agreed to limit his claim to two respects: the first relating to the filing of the Title XIX applications for his mother with DIM and the second being the testimony of the plaintiff's president and administrator at a fair hearing held by DIM with respect to the Title XIX application for Theresa Kundrath.
The second claim, concerning Anne Toth's testimony, is not alleged in the allegations of the first special defense. Although there was some brief testimony about this at trial, Mr. Kundrath never moved to amend the first special defense to include these allegations. This claim therefore is beyond the scope of the allegations of the first special defense and cannot be considered CT Page 11144 by the court. (Even if the special defense were amended to include this claim, the defendant did not sustain his burden of proof on this defense.)
There was conflicting testimony at trial with respect to the claim that the plaintiff failed to assist Michael Kundrath with respect to his mother's Title XIX applications. Mary Broderick, the plaintiff's director of admissions and social services, testified that she gave Michael Kundrath the phone number of the office to call to obtain the Title XIX application. She also testified that she usually explains the procedure a bit when she gives the telephone number and answers questions about the application if she can. She testified to several follow-up phone conversations with Mr. Kundrath when she urged him to obtain the application and fill it out. Ms. Broderick also testified that there is a medical form to be completed as part of the Title XIX application and she made sure that the form was completed by plaintiff's personnel, and mailed promptly to DIM. She further testified to numerous phone conversations with Mr. Kundrath and his attorney, Mr. Miller, after the application was filed.
Mr. Kundrath testified that in March, 1990 he spoke with Ms. Toth, the administrator, to tell her that his mother's assets would be exhausted by September or October. Ms. Toth, he testified, advised him to speak to Ms. Broderick when Mrs. Kundrath's assets were further depleted. He further testified that he spoke with Mary Broderick in August and she gave him the phone number to call at DIM to obtain a Title XIX application. Mr. Kundrath testified that he told Ms. Broderick that he would call her when he received the application and that she replied that he should not bother to call her because she did not fill out forms. Mr. Kundrath complained of two things: first, the abruptness of Ms. Broderick's refusal to help in completing the DIM application and, secondly, that although the plaintiff received notice in December that he had filed only half of the Title XIX application, the plaintiff's representatives failed to inform him of this. With respect to the second contention, the defendant failed to sustain his burden of proof. The only evidence that the plaintiff allegedly knew in December of the incompleteness of the Title XIX application was Mr. Kundrath's testimony, which was not corroborated in any way by any other evidence. The court finds this evidence insufficient to meet the burden of proof.
With respect to Ms. Broderick's alleged refusal to help with CT Page 11145 the DIM application, she testified that she has never filled out a Title XIX application and does not represent that she will do so because she does not have the necessary information concerning the applicant's assets, such as bank statements, income tax returns, etc. The court finds that Ms. Broderick explained this to Mr. Kundrath, who recalls the conversation differently now as a result of the contentious relationship which has arisen between the parties. The court credits Ms. Broderick's testimony and finds that the defendant failed to sustain his burden of proof with respect to his first special defense.
In his second special defense Mr. Kundrath alleges that his guaranty, although not in violation of General Statutes §19a-550(b) (26) because it pre-dated the statute, is nevertheless unenforceable as contrary to public policy. He cites Restatement (Second), Contracts § 178 (Supp. 1993) in support of his argument.
General Statutes § 19a-550(b)(26) provides that a "patient . . . (26) on or after October 1, 1990, shall not be required to give a third party guarantee of payment to the facility as a condition of admission to, or continued stay in the facility." This provision was adopted as part of Public Acts 1989, No. 89-348 ("P.A. 89-348"), which was approved on June 30, 1989. P.A. 89-348 is based on its federal counterpart,42 U.S.C. § 1396r(c)(5)(A)(ii).
Mr. Kundrath's guaranty was signed on March 14, 1989. P.A. 89-348 applied by its very terms to guaranties "on or after October 1, 1990."
Mr. Kundrath relies on § 178 of the Restatement, which provides
 § 178. When a Term Is Unenforceable on Grounds of Public Policy
 (1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.
(2) In weighing the interest in the enforcement of a CT Page 11146 term, account is taken of
(a) the parties' justified expectations,
 (b) any forfeiture that would result if enforcement were denied, and
 (c) any special public interest in the enforcement of the particular term.
 (3) In weighing a public policy against enforcement of a term, account is taken of
 (a) the strength of that policy as manifested by legislation or judicial decisions,
 (b) the likelihood that a refusal to enforce the term will further that policy,
 (c) the seriousness of any misconduct involved and the extent to which it was deliberate, and
 (d) the directness of the connection between that misconduct and the term.
The defendant failed to cite the immediately following section of the Restatement, however, which has a bearing on the application of § 178.
§ 179. Bases of Public Policies Against Enforcement
 A public policy against the enforcement of promises or other terms may be derived by the court from
 (a) legislation relevant to such a policy, or
 (b) the need to protect some aspect of the public welfare, as is the case for the judicial policies against, for example,
(i) restraint of trade (§§ 186-188),
(ii) impairment of family relations CT Page 11147 (§§ 189-191), and
 (iii) interference with other protected interests (§§ 192-196, 356).
Mr. Kundrath argues that his guaranty should be found unenforceable in accordance with the public policy set forth in P.A. 89-348, codified at General Statutes § 19a-550(b)(26), although the guaranty is not prohibited by the express terms of P.A. 89-348. His argument fails to address several considerations which bear against the result he urges.
First, the legislature has provided by statute that no statutory change such as that contained in § 19a-550(b)(26) shall have retroactive effect. General Statutes § 55-3
provides
 No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect.
Secondly, the defendant has not cited any authority showing that courts in Connecticut have adopted, cited or applied § 178 of the Restatement.
Finally, and most persuasively, the statute itself specifically sets forth a defined effective date, which is the clearest expression of public policy concerning when the statute should become effective. P.A. 89-348 was approved on June 30, 1989. Public Acts take effect on the October 1 following the General Assembly session at which they were passed unless the act otherwise specifies. General Statutes § 2-32. In this case, the legislature specifically provided that this act would take effect on or after October 1, 1990, adding an additional one year deferral to the otherwise applicable effective date of this legislation.
Section 179 of the Restatement (Second) Contracts provides that a court may derive a public policy against enforcement of an agreement from two sources, the first of which is the legislation relevant to the policy. In this case, the legislature has specifically provided in the legislation itself that P.A. 89-348 is to have a deferred effective date so as to delay its CT Page 11148 effectiveness until October 1, 1990. The defendant's contention that the court should apply the statute retroactively to a guaranty given before the statute's enactment is without merit under these circumstances.
Judgment is entered against the defendant Michael Kundrath for damages of $3,149.32, representing the balance due for room and board as of the date of trial, and interest as provided in the financial agreement of $9,619, plus costs[1]. With respect to attorneys' fees, the plaintiff seeks an award of attorney's fees in excess of $24,000. based on the time which the plaintiff's counsel has spent on the matter at plaintiff's counsel's normal hourly billing rates, which ranged from $175. to $195. per hour for partner's time and $125. to $145. for associate's time.
The defendant objects to an award of attorney's fees, first claiming that the plaintiff should be awarded no attorney's fees at all. The defendant relies on the authority of LittonIndustries Credit Corp. v. Catanuto, 175 Conn. 69 (1978), and argues that because the monthly Social Security checks have paid almost all of the plaintiff's room and board debt (what the defendant calls the "principal" part of the debt), the plaintiff is entitled to no attorney's fees because payment was obtained through other than the efforts of plaintiff's counsel.
It is conceded by plaintiff's counsel that counsel had no part in achieving the agreement between the plaintiff and Mrs. Kundrath's conservator which resulted in the payment to the plaintiff of the monthly Social Security checks. However, at the time this suit was brought, the plaintiff was owed more than $60,000. on the Kundrath account and no agreement had been reached with Michael Kundrath concerning the Social Security checks. Mr. Kundrath, a highly educated businessman, refused to cooperate with the plaintiff. This action was necessary because payment through the Social Security checks was not what the parties had agreed to in the financial agreement. Moreover, the continuance of the Social Security checks was uncertain. If Mrs. Kundrath had died or transferred to another nursing home, the payments would not have continued.
As of the time of trial, the balance due on the room and board portion of the account was $3,149.32. In addition, under the terms of the financial agreement, the plaintiff is also entitled to 1% interest per month on amounts thirty days overdue. CT Page 11149 This suit was necessary to enforce the plaintiff's right to the balance due plus interest as provided in the Financial Agreement. The Litton Industries case, supra, is readily distinguishable because the court there found that plaintiff was not entitled to any additional damages beyond what it had realized prior to suit. Id., 76. Accordingly, the court refused to award attorneys' fees. Id.
The defendant's second objection is that the amount of attorneys' fees sought is not reasonable given the small recovery of damages. Damages plus interest awarded by the court total $12,768.32. Plaintiff's counsel, Marc Kurzman, testified at length about the work done on this file, the hours spent and which attorney did the work. Counsel for the defendant stipulated to Mr. Kurzman's expertise in testifying about attorneys' fees.
It is well-established that courts may rely on their general knowledge of what has occurred in the cases before them in establishing the amount of reasonable attorney's fees. Bizzoco v.Chintz, 193 Conn. 304, 310 (1984). The court can evaluate the complexity of the issue presented and the skill required to deal with the issue. Id., 311. The court can also evaluate the reasonableness of an attorney's fee in light of the factors set forth in Rule 1.5 of the Rules of Professional Conduct.Connecticut National Bank v. Brown, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV90-0107084 (August 14, 1992).
A review of the file shows that the pleadings stage of the case did not require any unusual amount of work. The defendant's initial answer contained no special defenses and the pleadings were readily closed. The application for prejudgment remedy was resolved by agreement. The issues presented were not complex and the matter, which was in the nature of a collection matter, did not require a high level of skill. The trial, however, lasted three days and briefs were filed. Some of the evidence presented by plaintiff was repetitive and it appeared to the court that much out-of-court time was being spent by plaintiff's counsel and representatives of the plaintiff in recalculating in different ways the amount claimed to be due. The handling of this case did not preclude other employment by the plaintiff's counsel's law firm. The hourly rates charged by the law firm, however, are somewhat higher than those normally approved by the court for similar cases. Having considered all of these factors, as well as the amount of damages awarded in this case, including interest to CT Page 11150 which the plaintiff was entitled, the court finds that a reasonable attorney's fee for the matter is $8,500. and that amount is awarded against the defendant, Michael Kundrath.
The last issue to be decided in this matter is whether the court should grant the plaintiff's motion for default for failure to appear against Theresa Kundrath. It is conceded by all parties that Mrs. Kundrath was not competent at the time suit was brought. Service was made on an attorney for both Michael Kundrath and Theresa Kundrath and that attorney entered an appearance for both defendants. Later, however, he was forced to withdraw because of a conflict. Mr. Kundrath's new attorney did not appear for Mrs. Kundrath and she has remained without representation. (Although Mrs. Kundrath's conservator was notified of the pending motion for default at the court's request, he declined to arrange for a defense.)
The only Connecticut case which appears to address the issue of the propriety of entering or enforcing a default judgment against an incapable person is Litchfield's Appeal from Probate,28 Conn. 127 (1859). In that case the Supreme Court held that it would be inequitable for a Connecticut court to enforce a default judgment obtained in Massachusetts against an incapable person. In dicta, the court stated that service of process on an incapable person is of no effect and does not confer jurisdiction on the court. Id., 135. In light of the holding and dicta of this case, the plaintiff's motion for default for failure to appear against Theresa Kundrath is denied.
Judgment is entered on the complaint against Michael Kundrath for damages of $3,149.32 plus interest of $9,619. and attorneys' fees of $8,500. plus costs to be taxed.
/s/ Vertefeuille, J. VERTEFEUILLE