## WILKIE *against* HALL.

In *November* 1833, *A*, a deputy sheriff, attached the goods of *C*, in a suit brought by *B* against *C*, and made his official return, stating that he had attached such goods.   This suit afterwards went into judgment and execution ; and demand being made of *A* of the goods so attached by him, he failed to deliver them.   *B* then sued *A*, for such breach of official duty ; and while the latter action was pending in the county court, in *January* 1838, *A*, who had then ceased to be a deputy sheriff, was, on his motion, without any process served on *B*, or previous notice to him, permitted to amend his return in the first-mentioned suit, then in the possession of the court, by adding that the goods attached were subject to a prior attachment.   On the trial of the suit against *A* in the superior court, *B* offered proof of the original return and of the amendment allowed.   Held, 1. that *B* was not precluded, by the amended return, from showing the original return, and how and when it had been amended ; 2. that the county court could not legally permit such amendment to be made.

THIS was an action on the case, for neglect of duty by the defendant, as a deputy of the sheriff of *Litchfield* county,

in not keeping and delivering up, when demanded, to be ta-
ken on execution, 35 mahogany cased, bronze-pillared clocks,
which the defendant, as such deputy sheriff, had previously
attached in a suit brought by the present plaintiff against
*Anson H. Stuart.* The action was commenced in *December*,
1836.

The declaration alleged, that said suit of *Wilkie* v. *Stuart*
was commenced, by a writ of attachment, dated *November*
30th, 1833; which was served immediately, by the defend-
ant, by attaching said clocks; and was returned to the county
court of *Litchfield* county, holden on the third *Tuesday* of
*December* 1833: that the cause came to the term of the
superior court holden in *August* 1835, when the plaintiff re-
covered judgment against said *Stuart*, for 84 dollars, 90 cents,
damages, and 37 dollars, 39 cents, costs: that execution was
taken out and put into the hands of *Jesse Williams*, a deputy
sheriff, who, on the 21st of *October*, 1835, within the life of
the execution, made demand of the present defendant of the
goods and estate of said *Stuart* by him attached; but the
defendant did not keep them for the space of sixty days after
said judgment was rendered, but discharged them from the
attachment, and did not deliver them to the officer, when so
demanded by him, that they might be taken and disposed of
according to law, in satisfaction of said judgment and execu-
tion.

On the trial of this cause in the superior court, *August*
term, 1841, the plaintiff proved, that the suit of *Wilkie* v.
*Stuart* mentioned in the declaration, went into judgment, that
execution was thereupon issued, that demand was made of
the defendant, and that he had neglected to deliver the goods
attached, as alleged in the declaration. He then presented
to the court, in further support of his claims, the file in that
suit. On the return made by the defendant on said writ of
attachment, it appeared that he attached 35 clocks of said
*Stuart*, subject to a prior attachment by him, made on the
same day, in favour of one *Brockway*. The plaintiff denied
that said return was the true and existing return made by the
defendant; and to show that it was not, he offered to prove,
that the defendant, when he attached said clocks, and made
return thereof on said writ of attachment, made his return

*Litchfield,*
June, 1842.

Wilkie
*v.*
Hall.

*Litchfield,*
*June, 1842.*

Wilkie
*v.*
Hall.

without stating that he attached said clocks subject to any prior attachment, and that long after the action of *Wilkie* v. *Stuart* had gone into judgment, and after the defendant had gone out of office as deputy sheriff, the county court of *Litchfield* county, at their term in *January* 1838, upon the application of the defendant, (said record and return then being in the possession of said court,) permitted him to come into court, and amend his return, by adding that he attached said clocks subject to a prior attachment. The defendant did so amend said return, and made oath to the truth thereof.

To the admission of this evidence, or proof of any return, differing from the return as amended, the defendant objected, claiming that the return, as it now appears, is the true and only return of his doings on said writ of attachment. The plaintiff claimed, that he might show what the original return was, and how and when it had been amended ; and that the county court could not legally permit said return to be so amended ; and that, therefore, it had not been legally amended.

It further appeared, that said return was so amended, (provided it might be proved) after the commencement of the present action.

The case embracing these facts, was reserved for the advice of this court.

*Church* and *Seymour*, for the plaintiff, contended, 1. That the county court, in *January* 1838, had no power to allow an amendment of the officer's return, made four years before, and long after the suit had gone into judgment.

2. That if the officer who made the return, could be permitted after the term, to come into court and amend it, *Gideon Hall*, after he had ceased to be an officer, could not be. He was, at this time, neither party nor officer, but a stranger, a mere loafer.

3. That if the amendment could be made, at this time, and by this individual, it could not be done without notice to the party whose rights would be affected thereby.

4. That if the amendment was improperly allowed, the amended record was not conclusive, and it was competent to the plaintiff to show what the original return was.

*W. W. Ellsworth* and *Hall*, for the defendant, contended, 1. That if the officer's return is to be regarded as part of the record, the record must be taken *as it is*, and no enquiry can be gone into, to ascertain its former state. The superior court has now before it the *certified record* of the county court. Can the superior court, in this action, look beyond that record? Can it resort to the recollection of the county court judges, or of the clerk, or of by-standers? If such were the practice, what would become of the absolute verity of records?

2. That if such enquiry is admissible, the court had power to allow the amendment. A return on process is not a record, but merely a historical statement of the officer. If a mistake has intervened, why should it not be corrected, according to truth and justice, under leave of the court? This is the constant practice, while the cause is still pending, whether at the first or a subsequent term. But since the court has, at *all times*, the same possession and controul of the paper, which contains a wrong certificate of an officer of the court, why may it not legally exercise its discretion as justice requires? Whether the amendment should be allowed, at a more or less remote period, and under any peculiar circumstances, must be a matter of *sound discretion*. There is no limitation as to time, except such as the sound discretion of the court imposes. An officer has been allowed to amend his return after the lapse of more than six years. *Thatcher & al.* v. *Miller,* 13 *Mass. Rep.* 413. Amendments have been allowed, in numerous cases, where writs of error have been brought, and long after the term.

3. That the exercise of a matter of discretion, is not the subject of revision by another court. *Merriam* v. *Langdon,* 10 *Conn. Rep.* 460. 472, 3. *The State* v. *Rowley,* 12 *Conn. Rep.* 106, 7.

4. That the fact that the officer who made the original return, was, at the time of the amendment out of office, did not preclude the court from allowing it. *Adams & al.* v. *Robinson & al.* 1 *Pick.* 461. *Welles & al.* v. *Battelle & al.* 11 *Mass. Rep.* 477. 481.

CHURCH, J. The plaintiff, as long ago as *November* 30th, 1833, had attached thirty-five clocks of *Anson H. Stuart,* in a suit in his favour against said *Stuart*. The defendant, then

a deputy of the sheriff of *Litchfield* county, had served the writ of attachment, and in due form of law, then made and certified upon the writ, his doings thereon, under his official oath and authority. Since the commencement of this action against him, and while it was pending in the county court, to wit, in *January* 1838, and at a time after the defendant had ceased to be and was no longer a deputy sheriff, and several years after said original suit of *Wilkie* v. *Stuart* had gone into final judgment, and execution had been granted thereon, the present defendant, by the liberty and license of the county court, among the files and records of which court, said original writ then remained, made a material amendment and alteration in his original return of service upon said writ, and without any process or previous notice to the present plaintiff, calling upon him to shew cause why said amendment or alteration ought not to be made. And the question for our consideration, is, whether that amendment was lawfully made ?

It is objected, however, that as the plaintiff has introduced in evidence the original writ with the amended return upon it, he cannot contradict it, even by shewing what the original return was.

The plaintiff is not a volunteer in producing this return. He could in no other way prove, that the writ was served by this defendant ; but he is no more precluded by every statement made in the return, than any other person would be. A party may disprove the testimony even of his own witness. The return of an officer, by the law of this state, has never been treated as conclusive, but only as *prima facie* evidence of the truth of the facts stated in it. And more emphatically is this true, when the officer avails himself of his own return in his own favour. The return may be disputed :—and if so, there can be no more appropriate evidence for this purpose, than proof that the officer himself originally, and under his official sanction, had stated the facts differently from his more recent statement of them.

But the more important enquiry is ; could the county court lawfully permit this amendment to be made ? We think they could not.

It has been urged, that all amendments are within the discretion of the court, and that the court having in this case

exercised its discretion, there can be no further relief. This is true in all cases where the court has power to permit amendments, either by statute or common law, and in cases where the law has not made it obligatory upon courts to permit amendments. The question here then is, whether by law the court had any authority to allow this amendment to be made, at the time when it was made?

Our most liberal statute provision regarding amendments, is contained in the 34th section of the statute for the regulation of civil actions; by which, liberty is given *to parties* " to amend any defects, mistake or informality in the pleadings, or other parts of the records or proceedings." This regulation, nearly in the same language, was first enacted as early as 1794. And it is evident that it was intended, that this power of amendment should be confined to the time when the proceedings were *in fieri ;* because a discretionary power of awarding costs upon such amendments, is reserved to the court. There being no authority given, by our statutes, to amend in such a case as this, we resort to the common law to learn if the power is found there. The rule of the common law, as found in *Petersdorff's Abr.* vol. 1. p. 504. is, The court may amend at common law, in all cases, whilst the proceedings are in paper ; that is, until judgment is signed ; and during the term in which it is signed. For the roll or record is only the remembrance of the court, during the term ; but after the term, the court cannot amend any fault in the roll, unless it be occasioned by the misprison of the clerk ; for then the record is not in the breast of the court, but in the roll itself. 3 *Bla. Com.* 407. 2 *Burr.* 756. 1 *Wilson* 7. 76. 223. 1 *Tidd's Pr.* 558. 660. These principles are directly recognized and affirmed, by this court, in *Judson* v. *Blanchard*, 3 *Conn. Rep.* 580.

Where the roll or record varies from the original, the roll may be amended at common law, at any time ; for this is a misprison of the clerk, and the original furnishes some thing certain to amend by. 1 *Petersd. Abr.* 504. 510. and notes. This principle also has received the sanction of our own courts. *Foot* v. *Cady*, 1 *Root* 173. *Waldo* v. *Spencer*, 4 *Conn. Rep.* 71. *Judson* v. *Blanchard*, 3 *Conn. Rep.* 580. So also matters of form may be amended after the term. But in no case will essential amendments be allowed, unless

*Litchfield,*
June, 1842.

Wilkie
*v.*
Hall.

application be made for that purpose within a reasonable time. 1 *Petersd. Abr.* 504. *in notis.* In the present case, nearly five years had elapsed, before the amendment was made.

Writs of execution have been, by our practice, frequently amended, so as to conform to the original judgment and record.

The present experiment has been, at a venture, much further than any we have before known. Officers have, while they continued to be officers, and while the proceedings were *in fieri* and the parties in court, been frequently permitted, on motion, to amend their original returns. And if such amendments have been permitted after the proceedings ended and the record made up, we cannot presume this has ever been done, without some preliminary process or notice to bring the parties, and all the parties interested, before the court, to show cause in the matter.—A different course would violate first principles.—It would subject our public records to continual mutilation, and affect the rights of parties, which had become ascertained and vested, by the most certain of all evidence— a public record. Here, there was *no officer* to correct his original return : the defendant had long before ceased to be a deputy sheriff, and had become, as well in respect to this affair, as all others, a private man. As well might the county court have permitted any stranger, who would swear he knew the facts, to come in and correct or amend the return of an officer, in any particular. And besides this ; the parties to the original suit were out of court ; and if one of them, the present plaintiff, was there, he was not there as a party to the suit amended, but a different one. We cannot sanction a practice as dangerous as this.

We shall advise the superior court, that the plaintiff may shew what the original return was, and how and when it had been amended, and that the county court could not legally permit the amendment to be made.

In this opinion the other Judges concurred.

Judgment accordingly.