Stores, C. J.
If the record, of the judgment on which this action was brought, and which was adduced in evidence on the trial, is defective because it did not sufficiently show, either expressly or by legal presumption, that the, court rendering that judgment had jurisdiction to proceed in the case, it is at least very questionable whether such defect, could be supplied by the further evidence introduced, consisting of th.e. depositions and, agreement;. but we n,eed. not determine the. question of their admissibility, as we think that t.he record of the judgment was, of itself sufficient, without the aid of the, other evidence, to. entitle the plaintiff to recover, It. is conceded that tha.t. court was one of general jurisdiction a.n.d had cognizance of the subject matter of the action in which the judgment, was [ *13 ] rendered, and that it had acquired jurisdiction also of the person of the defendant, bv a regular service of the *11 process in that action,, as well as by his appearance in it after the return of the writ; and that, but for the intervention of the nonsuit which was entered in the case, that jurisdiction would have continued until the judgment, on which this action was brought, was rendered. But it appears from the record in the case, that, before that judgment was rendered, the entry of that nonsuit had been, by order of the court, erased on motion of the plaintiff, and the case- restored to its original place upon the docket. The record however, although it shows that this was done upon the motion of the plaintiff and that the court directed notice of that motion to be given to the defendant or his attorney within a prescribed time, does rio.t state that such notice was given before the nonsuit was set aside. The defendant defends the present action on the ground that that court could not, for want of jurisdiction, rightfully set aside that nonsuit and reinstate that case without actual notice to the defendant of that motion, and that the record .should show, not merely by legal presumption, but expressly, that such notice was given ; and for the want of such an express statement on that record he, insists that, as it does not sufficiently appear that the court had authority to proceed after the nonsuit was allowed, the judgment subsequently rendered in favor of the plaintiff^ and on which the present suit is brought, is null and void.
If the court had jurisdiction of the suit when it acted on the motion to erase the nonsuit, the propriety of the, manner in which that jurisdiction was exercised, in that or any of the proceedings in that case, can not be made a subject of enquiry or objection collaterally in any other case. The jurisdiction of the court must be presumed to have been properly exercised, and its judgments and decisions must stand good until they are reversed, by a proper appellant tribunal, on writ of error or other appropriate direct proceeding for that purpose. If then the court in Ohio had not become divested of its jurisdiction in, the case when it set aside the nonsuit, its action in that proceeding,, hav-ing taken place in *the exercise of such jurisdiction, [ *14 ] can not be collaterally impeached, since to. do. so would be to revise the decision of a tribunal in a matter of which it had sole cognizance, and thus to deprive it to that extent of its rightful authority. For jurisdiction of a case consists in the right to hear and determine it, and embraces, not only its merits, but the proceedings in it which are necessary to enable the court possessing such jurisdiction to bring it to a final determination,—that is, to such a determination that the court can not rightfully or legally proceed further in the. case. Ob- , viously no such end is attained so long as, the. proceedings in the *12 case which have taken place remain subject to the renewed or continued or further action of the court, or while it retains the right to revoke, annul, or alter in any manner its previous action. The Ohio court confessedly had, as has been stated, full jurisdiction both of the subject matter of the case before it and of the person of the defendant. It retained that jurisdiction until the case should be finally determined, and therefore during all its intermediate stages. It was not lost or exhausted when it directed the nonsuit to be entered. This is most clear and indeed is virtually conceded by the defendant who properly admits what is shown by all the common law authorities, (which it is not controverted apply to the proceedings of .that court,) that the court had the rightful authority to set aside that non-suit for what it should consider a proper reason, and in a mode which it should deem proper, so far as the course and practice of that court was concerned. Whether such reason was 'sufficient, or the manner of exercising its jurisdiction on the subject was the best, it was for that court only to decide; as every court is the sole judge of the manner of exercising its own jurisdiction, and its mode or course of proceeding is a matter of practice merely to be determined only by itself. But it is absurd to say that the granting of a nonsuit which the court has the rightful power to set aside, terminates the jurisdiction of the court in the case, for if the jurisdiction was terminated it would have no such power. Nor is its jurisdiction suspended by the nonsuit. The jurisdiction continues to exist in full j- j *force, to be exercised whenever a proper occasion shall require it. A suspension of the jurisdiction of a court, in the sense in which the term is used by the defendant, is a solecism. Jurisdiction is either exhausted or retained. It can never be properly said to be in a state where it is suspended and can be revived. The exercise of it by the court possessing it may be and often is suspended, but it still continues to exist, and only awaits the determination of the court as to when and how it shall be called into action. The question, then, whether the nonsuit was properly set aside, is not properly, as the defendant would have it considered, a question of jurisdiction as to the court in Ohio, but one as to the exercise of its jurisdiction. It respects only the ■ correctness of its decision on the merits of the enquiry whether the nonsuit should stand, and therefore of its acts while in the exercise of its undoubted jurisdiction. The statement of the question in this form carries with it its own answer. No other court can legally determine collaterally whether that court properly exercised its power in a matter which it had the sole right of determining. It is enough that, in setting aside the nonsuit *13 it had granted, it had in fact, as it appears on its record, reversed and annulled its previous act in a case where it had the acknowledged right to do so.
This view furnishes a complete answer to the claim that, after the nonsuit was granted, it was as necessary in order to confer power or jurisdiction on the court to set it aside, that notice should have been given to the defendant of the motion for that purpose, as it was necessary to notify him of the suit in order to enable that court to take cognizance of it in the first instance ; for, as the court originally acquired jurisdiction of the case, it retained and continued to possess it for the purpose of acting on that motion, and it was not a case of the re-acquisition of jurisdiction, if indeed there could be a case of regaining jurisdiction in a suit where it was once lost or suspended. It also shows the groundlessness of the claim that the suit was at an end by the granting of the nonsuit, for the right to set it aside proves that for that purpose the suit was still pending. We think that the *real and only question in this case [ *16 J is, whether it ought to appear expressly by the record of the judgment rendered by the court in Ohio that the defendant was served with the notice directed to be given to him of the motion to set aside the nonsuit, or whether, in the absence of the statement upon the record that he had not such notice, it will be presumed that he received it. And on this point we think that, the court being one of general jurisdiction, there is a presumption of law which can not be contradicted that such jurisdiction was rightfully, exercised, and that the giving of such notice, if necessary, is to be presumed. It is a case for the application of the familiar maxim, applicable to the proceedings of every court having jurisdiction of a case—omnia presmnuntur Solemniter esse acta—under which it is presumed that the decisions of such a court are well founded, and its judgments regular, and that facts, without proof of which its judgments would not have been rendered, were proved before it. Littleton v. Cross, 3 B. & C., 327. Spieres v. Parker, 1 T. R., 145. The King v. Lyme, 1 Doug., 159. The King v. Nottingham Water Works Co., 6 A. & E., 355. Broom’s Legal Maxims, 427. In Moore v. Starks, (1 Ohio St. Rep., 369,) it was held that the judgment of a court of general jurisdiction, in a case in which it expressly appeared from the record that no service of the process was made-upon the defendant, was a nullity, but that, if the record had been silent on the subject of such service, the judgment would have been valid and could not be collaterally impeached. The court says ; “ If the court obtained jurisdiction over the person of the defendant, it matters not what *14 errors may have intervened,- their proceedings can not be collaterally impeached, but must' be held valid until reversed. If however that jurisdiction was not obtained, the record is a nullity. This case differs from casés in which the record is silent on the subject of pro'cess or service. In such cases it has been held, that although the decree of the court is reversible for error, not showing affirmatively a necessary fact, yet because á court of general jurisdiction has assumed .to exercise C *17 ] jurisdiction of the case, it will be presumed that "notwithstanding the silence 'of the record; the court had obtained jurisdiction over the person of the-defendant.” These principles are confirmed in Richards v. Skiff, (8 Ohio St. Rep., 686,) and seem to us to be elementary. Hence, if it were conceded to be necessary to- the validity o‘f the order of the court setting aside the nonsuit in question, that notice of the motion for that purpose should have been given to the defendant, the presumption is tha't such notice was given; and this presumption supersedes the necessity of an express statement to that effect on the record. It is necessary that there should be so much confidence in a court of general jurisdiction that it will be presumed, in the absence of an express statémént on its records, that wheii justice required notice to a party of a particular proceeding by which he might he affected, such notice was given ; and the propriety of such a presumption is most strongly shown in the case before us, as it was satisfactoirly proved that, according to the' course and practice of the court in Ohio, whose judgment we are Considering, no record is made of such orders as the one now in question or of the proof of the service of the motion on which they are founded. Elsewhere than in Ohio it is not the usual course, nor is it ever necessary, to make any entry on the record of a court, of such a- proceeding, in the progress of a Cause, as the setting aside of a nonsuit. When the proceeding is thus Set aside it is treated as a nullity and as though it never took place,-and it -is considered that its entry upon the record, if it Were' ever made, is expunged. If that had been done in the record of the judgment now in question, it would have been entirely regular, and in that case it would be clear that the validity of the record, in regard to the erasing of the nonsuit, could not be attacked in an action like the present, of. •debt on the judgment evidenced by that record; and in our opin- - ion the legal consequences t'o the parties are the same as if that entry had been literally expunged.- In-the absence, therefore, of any statement on that record that notice of the motion to-erase tihe nonsuit was given to the defendant, such notice, even if it were requisite, must be presumed to have been given, and *15 the record need not expressly show it. If the claim of the defendant is correct, a record of a judgment of our own superior court might, in an acton of *debt upon it, [ *18 ] be treated as an absolute nullity for a mere matter of error in some of its interlocutory proceedings; for this question, as here presented to us, depends not upon any principles which apply peculiarly or exclusively to the proceedings of the courts of any particular state under its local laws, or generally to those of foreign tribunals, but on principles of general law and of universal application. The attempt, in one of our own courts, to nullify collaterally one of its judgments in a case within its jurisdiction, on the ground that it had, in an intermediate stage of it, incorrectly set aside a default or nonsuit, would certainly be a novel, and, it is scarcely necessary to say, unsuccessful experiment.
A new trial is not advised.
In this opinion, Hinman and Sanford, Js., concurred; Ellsworth and Butler, Js., dissented.
Ellsworth, J.
This action is brought on a judgment rendered against the defendant in the state of Ohio. It must be agreed to be the settled law of this state, as declared in Wood v. Watkinson, (17 Conn., 504,) as it is of every enlightened state or country, that such an action can not be maintained unless the court which rendered the judgment had jurisdiction of the cause, which jurisdiction it could obtain only by the appearance and acquiescence of the defendant, or by his having had due and legal notice to appear; and further, that this fact must be apparent from the record, and can not be made out by proof aliunde. The appearance or notice must be shown in this particular manner, or the record is incomplete and insufficient ar the record of a judgment, and will not sustain an action brought upon it.
Now, in examining the record produced by the plaintiff, we learn that, at a court of common pleas, holden in the county of Lorain in the state of Ohio, at the October Term, 1857, the plaintiff recovered judgment against the defendant by default *for $345.80. No person appeared for the [ *19 ] defendant, nor had he or any one notice of the pendency of the suit, that they might appear. And yet it is contended that the record shows a good cause of action—a judgment of a court of record which can be enforced here and elsewhere. It may not be improper at this place to remark, though not perhaps very important, that when this judgment was ren *16 dered in Ohio, the defendant was not, and for some time before had not been, a citizen of that state, but was residing in Connecticut.
The course of argument pursued by those of mv brethren, who think the plaintiff ought to recover, does not produce equal conviction upon my own mind, while I entertain the greatest esteem and respect for their opinions. They believe, if I understand them correctly, that, taking the entire record, enough appears from what is distinctly stated or from what may be inferred from what is so stated, to satisfy the rules of law which I have just mentioned. Let us then examine the record and see what it contains.
It appears that, at the February term of the court in Ohio, in the year 1847, this plaintiff sued this defendant in a certain action of assumpsit, and that the defendant, being duly served with notice, appeared and made answer, and, after the case had been in court several terms, obtained judgment in his favor upon the nonsuit of the plaintiff, not only for his costs, but to the further effect, as it was expressly adjudged, that he “ go hence without day.” After the lapse of nearly a year and the intervening of a term of the court, the plaintiff’s attorney, as it appears, made his ex parte application to the court, representing that a mistake had occurred on the part of the court in granting the judgment in favor of the defendant, and asking that the judgment might be opened' and erased, and the original suit reentered, although it had disappeared two terms before from the docket, and had not been pending in court since the final judgment then rendered in favor of this defendant. It does not appear that the defendant had notice of this ex parte proceeding. It is not pretended that he had notice himself and it is [ *20 ] ^proved that he had not,—nor had he an attorney to be notified, nor was any one notified as such, nor did any one assume, (for it would have been mere assumption,) to appear for the defendant, and so, after sundry continuances, the court allowed the old case, then in judgment, to be re-entered, and the plaintiff was permitted to take judgment against the defendant, then a citizen of Connecticut, for the sum of $345.80, which is the judgment now in suit.
What is there now in this entire record, which, on any principles of the law, or of common equity and fairness, exempts the case from the rule which applies to foreign judgments of courts which have not acquired jurisdiction ? If the defendant did not himself, nor any one for him, appear and submit to the jurisdiction of the court, and had no notice to appear, what sort of a judgment is the one before us ? And how did the court *17 obtain authority to inquire into the facts stated in the ex parte motion of a certain attorney, and make that inquiry the foundation of a judgment by default? As said by Johnson J., in Mills v. Durryee, 7 Cranch, 481, “ There are certain eternal principles of justice which never ought to be dispensed with. One of them is, that jurisdiction can not be justly exercised over people not within reach of its process, or over persons not owing them allegiance, or not subject to their jurisdiction by being found within their limits.” I lay out of the case, for the present, what is said in the motion as a ground for re-entering the first case, or what is said to have been found as justifying the reentry ; because the facts could not be assumed to be true without a trial by the court, and no trial could be had without notice —none that ought to be allowed to affect the defendant—not even for the restoration of the first case, much less for reversing the judgment in the defendant’s favor and laying the foundation for a new judgment against him, until he had been duly summoned back into court to take notice of its proceedings. In every sense of the word, unless we are prepared to give up substance for forms ánd fictions, we must admit that the first suit between these parties was terminated in a judgment, and, strictly speaking, remains so *to this day. I can [ *21 ] not but consider the motion itself, when filed in court in February, 1856, as a new case of itself; and when it was afterwards allowed, and the re-entry made, the court of necessity had before it a new case, growing out of an old one it is true, but one which had become fixed and consummated in judgment; unless another thing be true, that the proceeding is to be treated as a motion for a new trial, (which it very much resembles,) in which aspect the first judgment, if made through mistake, should, on a fair trial, if necessary, be set aside and the case opened for a new hearing after due notice.
It has been said that the judgment of the May term, 1855, was in the nature of an interlocutory judgment, not final, and that the judgment of Feburary, 1857, was only putting the case right on the record. But it was final in that case, for nothing remained but execution, and that was to issue in the defendant’s favor. That suit was ended if it is ended at all, and the recoz’d was made up correctly, whatever proceedings have taken place since. Did the first case remain in court, within the juz’isdiction and contz’ol of the court, after the judgment of nonsuit, and duz-ing the subsequent inteiwening terms, while it no whez-e appeared, nor by possibility could appear, on the docket of the court ? If so, there is not a single case tried by the court since its organization which is not in court still and subject to its pleas *18 ure like any other. I need not certainly cite authorities to such a point. Blackstone, in the third volume of his Commentaries, p. 316, says: "If a continuance of the case is omitted, the case is discontinued and the defendant is discharged sine die ; for, by his appearance in court, he has obeyed the command of the king’s writ, and, unless the case be adjourned over to a day certain, he is no longer bound to attend upon that summons, but he must be warned afresh and the whole must begin de novo.” In Finch v. Ives, (24 Conn., 387,) this court held that a judgment for costs was a final judgment.
This principle received much -consideration in the decision of the case of Badger v. Gilmore, (37 N. Hamp., 458.) The question was, when can a suit be said to be pending. [ *22 J The *court say: “ ‘ Pending’ is defined by Webster to mean ‘ depending, remaining undecided, not terminated.’ Blackstone defines an action, suit or proceeding, as the instrument whereby the party injured obtains redress for wrongs committed against him, either in respect to his personal contracts, his person or his property. The Mirror defines an action as the lawful demand of one’s right. Bracton and Fleta characterize an action or suit, in the words of Justinian, as the rightful method of obtaining in court what is due to any one.” (3 Bla. Com., 116, 117.) The case had gone into judgment, and the court ask, “ Was there, after this, any such action or proceeding, any such instrument or means whereby the injured party obtains or seeks to obtain redress for wrongs committed or alleged to have been committed against him, depending, remaining undecided, not terminated, between the parties?” “The original suit, (they continue,) brought by the plaintiff.to recover of the defendant damages for the non-payment of the promissory note, could not, it seems to us, be considered as pending. The judgment was final and conclusive, and the suit having performed its office was thereafter dead—fundus officio. No proceeding by review can reverse or otherwise affect that judgment. It stands, and unless reversed by proceedings in error must ever stand, as the final termination and conclusion of the suit which preceded it. The review does not operate to stay execution on the first judgment, nor can it ever operate as a reversal of that judgment in whole or in part. The original judgment remains, whatever be the result of the review, and the party in whose favor it was rendered retains whatever he obtained by means of it.” Several authorities are then cited. Again the court say : “ There was no longer any proceeding in existence which could change the result, or in any way affect *19 the relations of the parties towards each other growing out of it.”
Well may we be alarmed at the announcement of the doctrine, “ once in court always in court.” And I can not but ask, if it be true that this defendant was not out of court after the nonsuit and a judgment that he might go without *dav, is he out of court now ? If he is, at what time [ *23 ] did he get out, and by what proceeding ? I repeat, the first case in the Ohio court went into judgment in May, 1855, and nothing could prevent the legitimate consequence of its being a final judgment but an appeal or motion for a new trial or some like proceeding. At that time, if the thing be a possibility, the defendant was dismissed—adjudged to go hence and remain out of court until duly summoned to return. This avowedly never has been done; and what has been done in his absence must stand for nothing. It is an absolute surprise upon him, and, for one, I can not co-operate in enforcing the ex parti judgment of the court against him.
The principle for which I contend was fully settled, or assumed to be settled, in the case of Wilkie v. Hall, (15 Conn., 32.) And if the principle there laid down be the law in relation to the judgments and files of our own courts, I know not why a foreign court, or the judgment of a foreign court, should be placed on any higher ground. The common law does not require it, nor does the act of Congress. That act, and the constitution of the United States touching the credit to be given to the judgment of the courts of the several states, are satisfied by giving to a foreign judgment as much credit as we give to one of our court. Besides, it is apparent from this record that in the particular in question the law of Ohio and of Connecticut is the same, for the court ordered notice as an indispensable prerequisite, but it was not given.
This brings us to the only question, as I conceive, which is or can be made in the ease, to wit—are the cases, the one commenced in October, 1847, and the one commenced in February, 1856, in the eye of the law the same case, so that the court, having jurisdiction over the defendant by his appearance in tile-first, has jurisdiction over him in the last without further notice or his appearing ?
No fiction of law ought to obtain or be allowed to prevail against a clear and vital matter of fact, such as an imaginary appearance of the defendant, when in truth he was not present nor *had notice that he might be present, espe- [ *24 ] daily if it be a case where he has been dismissed by the court after having once appeared, and gone out of court, and *20 the term closed. Any such fiction, so unreasonable in itself and liable to be so unjust in its operation, is repugnant to my sense of right, and it seems to me subversive of the fundamental principles of judicial proceedings.
I repeat it, there can not be such a doctrine as that a case once in court is always in court, or that a party once in court is always in court. We might as well say that a man once an agent is always an agent. Indeed, this latter doctrine seems to be claimed by the plaintiff as a sound one and applicable in this very case—a point which I will presently consider. During the actual pendency of a case in court, whether at the firstorat subsequent sessions of the court, there maybe some propriety in applying such a rule, but none at all after the case has gone into judgment and lias disappeared from the docket of the court. I suppose it may be true that the clerk of a court, who is sworn to keep a true record, may, whether the court be in session or has adjourned, perfect and if necessary amend his record, that it may agree with the fact and be a true record. But a judgment that is entered as it was in fact pronounced, as was the case, with the judgment rendered in May, 1855, is absolutely unamendable by the clerk, or even by the court, after the term has closed. The suffering party may after this apply for relief, according to the emergency of his case, by some new and distinct proceeding adapted to the case ; but the opposite party must have notice of such application or the whole proceeding upon it will be void. Wilkie v. Hall, 15 Conn., 32. Badger v. Gilmore, supra.
If I am correct in my view, that the second suit is not the same as the first, and that notice was necessary in the second that the court might acquire jurisdiction to render a judgment in personam against the defendant, there is in my opinion nothing in the idea so much dwelt upon, that the court, being one of general jurisdiction, must be presumed to have proceeded correctly, and that therefore it must be presumed that [ *25 ] notice was given to the defendant if that is a *necessary preliminary. But if the suits are distinct, and notice in one is not, and in a case situated as this was can not be, notice sufficient to give jurisdiction in the other, the court in fact had no jurisdiction, and hence the principle of presumption has here no application.
Nor is there any force in the idea, that it may be presumed ■that notice of the pendency of the second suit was given to Mr. Bagg, the defendant’s attorney in the first suit. The difficulty is the same as before, with this further difficulty, that there is no. rule of law that once an attorney always an attorney. There is no proof that Mr. Bagg was authorized in fact to ap *21 pear for the defendant in the second suit, nor did he assume to act as such ; and the record too is silent as to any notice to him as the attorney of the defendant. The truth seems to be, that the plaintiff’s attorney took the whole affair into his own keeping—represented that there was a mistake on the part of the court in rendering the judgment—gave no notice to the defendant nor to any one for him of the motion which he had 'made—sustained his motion wholly by ex parle evidence—and in effect privately got the nonsuit stricken off, the existing judgment reversed and a new one entered against the defendant in his absence and when he had no reason to believe that the defendant had notice of what was being done. If the plaintiff can do this and be upheld by the law, the defendant can do the same on his part, and so the parties may keep on following eacli other without notice ad infinitum.
If authorities are needed in support of the plain principles of law which I have laid down, I refer to the-case of Wood v. Watkinson, already cited for another purpose, and to that of Aldrich v. Kinney, (4 Conn., 380,) where the whole law as to the effect of foreign judgments may be found collected and ably commented on. In the latter case the court held that even the record, in a foreign judgment, that the defendant appeared by attorney, meant only that the defendant appeared by a person assuming to be attorney, and the court allowed the defendant to prove by parol that he did not *authorise [ *26 ] such person to appear for him, and he was thus enabled to avoid the judgment.
Much has been said, in the progress of the case, about the power of a court to alter and amend its records. There is undoubtedly such a power, incident to every court of record, which may be exercised within proper limits. It may be exercised at any time during the term of the court w-hich rendered the judgment, for the entire term is but a point of time. The proceedings of the court are in fieri until it adjourns without day. Of course, until then, it may determine what its proceedings are and what shall be the form of the record to express-them. During the term the proceedings are in the breast of the court, and if the clerk has not made a true record of the proceedings it is his duty to alter it and the court may require it of him. Now, in the case before us, the record was at first exactly correct; there was a nonsuit, there was a judgment for the defendant for costs, and that he go hence without day. So the record stood when the term of the court closed ; so it stands now-, and will stand until reversed on proceedings in error. It *22 expresses the exact truth, the final decision of the court in the case.
As to the correction of mistakes made by the clerk himself in the discharge of his duties, and bv sheriffs and other executive officers in the discharge of theirs, especially of returns on mesne and final process, it has been much discussed, in our own courts and elsewhere, whether it can be done at all, and, if it can, when, and by whom, and upon what preliminary proceedings ? The general rule is very well laid down in Petersdorff’s Abridgement, (vol. 1, p. 504,) as follows: “ The court may amend at common law, in all cases whilst the proceedings are in paper—that is, until judgment is signed, and during the term in which it is signed. For the roll or record is only the remembrance of the court during the term, but after the term the court can not amend any fault in the roll, unless it be occasioned by the misprision of the, clerk, for then the record is not in the breast of the court but in the roll.” So, on page 504 : [ *27 ] “ When the roll or record varies *from the original, the roll may be amended at common law at any time, for this is a misprision of the clerk, and the original furnishes 'something to amend by.” 3 Bla. Com., 407. Alder v. Chip, 2 Burr., 756. Havers v. Bannister, 1 Wils., 7. Low v. Newland, id., 76. Waters v. Bovell, id., 223. Judson v. Blanchard, 3 Conn., 586. Matheson v. Grant, 2 How., 282. Maherin v. Brackett, 5 N. Hamp., 11. Wendell v. Magridge, 19 N. Hamp., 112. Clark v. Lamb, 8 Pick., 415. Foot v. Cady, 1 Root, 173. Waldo v. Spencer, 4 Conn., 71.
But I need not multiply words. The law on this part of the case was amply stated, by the then chief justice, in Wilkie v. Hall. There the defendant, a deputy sheriff, had made an indorsement on a writ of attachment that he attached certain goods and in his indorsement he had misdescribed them, and he sought to amend his indorsement by making the description correct. The application was made some years after the case had gone into judgment. It was insisted that the court, being the • custodian of its records, could at any time, if justice required it, make the return correct, or allow the officer himself to do it; but the superior court, in reviewing the decision of the county court allowing the amendment, held that it ought not to have been allowed in the particular case, because the parties were not before the court and great injustice might ensue. The general power to amend seems to have been conceded.
It has appeared to me, if our court will not allow of the amendment of an officer’s return after the case is in judgment without notice, it will not and can not allow an existing judgment to be *23 reversed and a new and different one rendered without notice, and if our courts would not sustain such a proceeding here, we may and ought to presume that no action would have lain in this judgment in the state of Ohio ; and I can not believe that the • judgment now before us would have received any favor in the courts of the state of Ohio.
Buteep., J.
In the result to which a majority of the court have come in this case, I can not concur.
*The plaintiff sought to recover in debt on a judg- [ *28 ] ment obtained in Ohio. On the trial he offered the record of the Ohio court in evidence. That record shows a proceeding properly commenced; an appearance of the defendant; a judgment of nonsuit in his favor; an adjournment of the court without continuing the case; a motion filed at the second term, and nearly one year thereafter to set aside the nonsuit; an order of notice on that motion; and, at a term long subsequent, an allowance of the motion, and a final judgment for the plaintiff; It does not show that the order of notice was complied with, or that the party again appeared personally or by attorney, and it is conceded he did not so appear, and when the motion was filed he was out of the state, a resident, and has ever since been a resident, of Connecticut. The record was objected to and admitted. In connection therewith, and to avoid the effect of the nonsuit, the plaintiff below offered parol evidence to show that the nonsuit was obtained without the knowledge of the plaintiff, and by the fraud of the defendant’s attorney. That was also objected to and admitted.
The parol evidence so offered and received directly contradicts the record, and in relation to facts not jurisdictional, and the court erred in admitting it. A judgment can not be collaterally impeached except for want of jurisdiction, nor on the ground of fraud. In the case of McRae v. Mattoon, 13 Pick., 53, an attempt was made to impeach a judgment rendered in North Carolina, on the ground that it was obtained by fraud. The court held, and rightfully held, that it could not be done. “ If,” say they, “ any proceedings have taken place there (in North Carolina) which would avoid the judgment obtained against the defendant upon error, or if a new trial should be granted, the application must be made to the judicial courts there. But, so long as the judgment remains in full force, the courts in Massachusetts cannot go behind it.” And such is the law in Connecticut as recognized by this Court unequivocally in Aldrich v. Kinney, 4 Conn., 380; and the court below should have conformed to it. Probably they would have done so if this had *24 been the only point in *tbie case. It is claimed that, however this may be, the judgment of nonsuit was in fact set aside by the court in which it was rendered, and the fact that it was rendered is therefore of no importance. But does it appear that it was so lawfully set aside, and a final judgment so lawfully rendered for the plaintiff in the case, as to justify us in recognizing and enforcing the latter judgment as a valid one?
The proceeding was doubtless before a court of general jurisdiction, and in favor of it all reasonable intendment must bé made. But I do not understand the rule of intendment to be broad enough to cover this case. We may well intend or presume that the court in Ohio had power to set aside a nonsuit, and to do so on motion, and on motion filed at a subsequent term. In this state we should in such a case require a petition formally brought and served, but that is a matter of practice, and they must, as to the time and form of the proceeding, be presumed to have acted in accordance with their practice. To this, and every thing which the court have done, we may and should apply the rule, “ Omnia presumuntur rite esse acta,” so far as the power arid practice of the court are involved, and when and so long as the defendant was in court. But how far can we go in conformity with the precedent and principle in presuming jurisdictional facts, or in presuming the defendant in court. Can -wepresume in this case that the order of notice recalling the party into court was unnecessary, and therefore that the court acted legally if they acted without evidence of a compliance with it ? or presume that the court found it to have been complied with before they proceeded to set aside the nonsuit ? or, can we presume that, by the practice of the courts of Ohio, a party once legally in court is to be considered as remaining there after a judgment of nonsuit dismissing him, prepared at any term, or at least at the second term thereafter, to meet a motion to set aside the nonsuit and an application for final judgment the other way. With all deference, I must be permitted to say that I can not bring my mind to presume, or to see how this court can presume, either of those things, consistently with princi- [ *30 J pie, precedent upon the face of this *record. In my judgment actual notice to the defendant recalling him into court was necessary upon principle and by the local law, and the record should show that it was given.
The fallacy of the claim of the plaintiff consists in considering the motion to set aside the nonsuit as a part of the proceedings in the original case, and claiming for it such presumptions as would be applicable to it if such was its character. But such is not its character. It is obviously intrinsically and upon the *25 face of the record, a new, ulterior, distinct and independent proceeding; having no relation to the original suit, except that the object sought to be attained by it was to restore to the original case, which had gone into judgment and was concluded, its pendency, so that further proceedings could be had in it. It counts upon the fact that the original case had gone into judgment, and seeks relief from that judgment. It has all the elements of a new and distinct proceeding that pertain to a writ of error or a petition for a new trial. It is not in form a motion in error, for it does not go upon the ground that there is error apparent upon the record, nor a petition for a new trial, for there had been no trial. It was in form, as it necessarily must have been, a motion to set aside the nonsuit, but was in substance the same.
Again, the court in Ohio treated the motion as a new and distinct proceeding, entered it in the docket as a motion, with an order of notice, and continued it as such from term to term until action upon it was had. It appears therefore conclusively from the record itself, that the court in Ohio considered this proceeding, (as the great principles of justice require us to consider it,) as a new and distinct proceeding, imperatively requiring notice. Such being its nature, it can only be aided by such presumptions and intendments as are applicable to it as a new proceeding, and no presumptions which could be legitimately applied to it if made in the original case while pending, and before final judgment and adjournment without continuance, can be stretched over the ^barrier of a [ *31 ] final judgment, and the gulf of an intervening term without continuance in aid of it.
“ The defendant,” says Judge Kent, in anote on page 261 of the first volume of his Commentaries, “ must have had due notice to appear and be subject to the jurisdiction of the court, or, if a foreigner or non-resident, he must actually have appeared to the suit, or.the judgment of another state will not be deemed of a/ny validity. This is a plain principle of justice which pervades the jurisprudence of this and all other countries.” And such is the law as early expounded in this state, in Kibbe v. Kibbe, Kirby, 119, and affirmed or recognized in Smith v. Rhoades, 1 Day, 168, Aldrich v. Kinney, 4 Conn., 380, and Denison v. Hyde, 6 Conn., 508.
Now the case finds, and it is conceded, that, at the time this new proceeding was commenced, the defendant had ceased to be a citizen of Ohio, and had become a citizen of Connecticut, and unless it appears that the court acquired jurisdiction over him, in or in relation to this new proceeding, by notice or appearance,’ *26 the subsequent action of the court therein, the setting aside of the nonsuit in the original cáse, and the rendition of the judgment in favor of the plaintiff, were nullities, and the original nonsuit is in full force. It is apparent that no such jurisdiction Was acquired.
It may be conceded that Bagg continued attorney for the plaintiff, or perhaps it may be fairly presumed that, in new ulterior proceedings in error or revision, notice to the attorney in the original cause by the laws of Ohio was sufficient, where the defendant was absent from or had ceased to be a resident of the state. Such a provision exists in many of the states and seems essential to the due administration of justice. But it does not appear by any evidence, admissible or inadmissible, that even Bagg was notified, and it does appear that the defendant was not, and that there was no appearance. The record, the only legitimate evidence in the .case, is entirely silent as to the service'of the notice. The presumption, if any is to be derived from the record, is, that notice was not given to Bagg. Clearly then, the court of Ohio acquired no jurisdiction in that new proceeding ; and its action therein, and thereafter in re- [ *32 ] lation *to the original case as against this defendant, was a nullity.
It is obvious at a glance, that illegal judgments may be obtained against non-resident defendants, more readily by motions filed in court at a subsequent term, without notice in fact to the defendant or his attorney, than through a want of notice in the original suit; and we should see to it in this case that the judgment is not of that character. I am constrained to think it is. The plaintiff, to eke out the deficiencies of his record, introduces the deposition of his attorney, who procured the non-suit to be set aside and the judgment in favor of the plaintiff to be rendered, and his deposition was received and has come up as a part of his case. The witness seems desirous to prove that the court had evidence of the service of the notice, ordered, by swearing that the court takes judicial notice of such motions. His language is neither professional nor intelligible. If he means that, in a pending case where the parties appear, the courts of Ohio hear and determine ordinary interlocutory motions without recording them, he swears to what is doubtless true there, as it is here and everywhere. But if he meant to be understood that the courts of Ohio take judical notice of motions and orders of notice made after a case has gone into judgment without continuance, and at a term subsequent to that at which it was rendered, and of the service of such notice, he not only swears against all principle and precedent, but against the very record. *27 The court in Ohio did record the motion, the order of notice, the continuances, and all the subsequent proceedings therein. Now if any person in point of fact knew that the order of notice was served on Bagg. that witness knew it, and could and would have sworn to it. He lias not done so, nor has the plaintiff, although making an evident effort to eke out the record, attempted to show it in any other wav. I think it therefore perfectly apparent, irrespective of the consideration that no information was given by Bagg to the defendant, that we are called upon here to enforce a judgment improperly obtained.
Entertaining these views of the case, I think the granting of *'a new trial not only necessary to the cor- [ *33 j rect administration of justice between these parties, but essential to the maintenance of a sound judicial policy. If a party comes here to enforce a judgment of another state against one of our citizens, we must, under the constitution and act of Congress, and ex comitate, permit him to do it. But we can and should require him to bring a full and fair record, showing, prima facie at least, affirmatively and expressly, or by the clearest implication, all the facts necessary to show that the judgment was regularly rendered, by a court having jurisdiction of the subject-matter and the party, and in a manner, and in conformity with a practice, not inconsistent with the great principles of justice recognized by courts wherever the common law is in force.
New trial not advised.