[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, John Pender, Mary Pender, Nancy Simmons and Dorothy Kemp, instituted this action against the defendants, Joseph Matranga, Christina Matranga and Chris Wallace, returnable December 27, 1994.
John and Mary Pender are the owners of Lots 6A and 7 as shown on a certain map entitled "MAP SHOWING SUBDIVISION OF PROPERTY OF BURTON F. SHERWOOD LOCATED ON THE WEST SHORE OF LAKE CANDLEWOOD IN THE TOWN OF NEW FAIRFELD[,] FAIRFIELD COUNTY CONNECTICUT" prepared and certified substantially correct by Sydney A. Rapp. CT Page 10827 (Exhibit 5.)
Exhibit 5 was recorded in the office of the Town Clerk of New Fairfield as record map #441, on December 7, 1953.
The plaintiffs, Nancy Simmons and Dorothy Kemp, are the successors in title of Louise F. Taylor, one of the signatories to a certain agreement dated October 23, 1944, recorded in the land records of the Town of New Fairfield both at Vol. 29 p. 159, and Vol. 38 p. 523 (Exhibit 4).
The defendants, Joseph Matranga and Christina Matranga, own Lot 6 as shown on Exhibit 5, a 10 acre parcel which overlooks Candlewood Lake. They have indicated plans to construct a dwelling on the parcel.
The defendant, Chris Wallace, constructed a road on behalf of the Matrangas, which bisects the property owned by the plaintiffs, John and Mary Pender.
The Penders bring this action seeking to enjoin the Matrangas from using and/or improving a roadway which runs through the rear of their property, thus providing access to Lot 6.
The Matrangas filed an answer to the complaint on December 16, 1996, including four special defenses.
The plaintiffs' reply pleading, dated December 18, 1996, admitted that the defendants have "the right to pass and repass over a right of way traversing their [Penders'] property," but denied that the defendants have a right to construct, maintain or use the road on their property.
The defendants claim an express easement through the record map, agreement (Exhibits 5 and 4), and deeds to the property.
They also claim an easement of necessity and an easement by implication over the land of John and Mary Pender, Lots 6A and 7 on the Rapp Map (Exhibit 5).
Although both the Penders and the plaintiffs, Nancy Simmons and Dorothy Kemp, seek money damages in their complaint, no evidence of money damages was presented at trial by any of the plaintiffs, and the claim was abandoned by counsel during the trial (Tr. p. 100). CT Page 10828
Nancy Simmons and Dorothy Kemp, as successors in title to Louise F. Taylor, seek to enjoin construction of a dwelling on Lot 6 by the Matrangas.
On August 9, 1995, the Honorable Morton I. Riefberg, after hearing, issued a temporary injunction in favor of the plaintiffs, enjoining the defendants from "performing any and all acts outside an area [four feet] . . . from either side of the center line of the right-of-way," located on the Pender property.
The injunction also applied to a companion case, McEachern v.Matranga, Docket No. 319038.
Trial was held on July 9, 1998 and July 17, 1998.
Before addressing the particular facts of this case, it is necessary to review the history of the area, with particular reference to record map #441 (Exhibit 5) and the agreement, dated October 23, 1944, between Burton F. Sherwood, the common grantor, and a group of landowners referred to as the Kellogg Point Residents (Exhibit 4).
The Penders and Matrangas both trace title to their property to a common grantor, Burton F. Sherwood.
The "Rapp Map" (Exhibit 5) was prepared for Burton F. Sherwood and recorded on December 7, 1953.
The map shows properties of various "Kellogg Point Residents" many of whom are also signatories to an agreement between Burton F. Sherwood and the Kellogg Point Residents dated October 23, 1944 (Exhibit 4). The agreement is recorded in two places in the New Fairfield land records.
The map identifies a "Wood Road" with parallel dotted lines, beginning at a location where it joins an existing private road.
Wood Road runs through Lots 6A and 7, currently owned by John and Mary Pender, and ends at Lot 6, the 10 acre parcel owned by the Matrangas.
David L. Ryan, a licensed land surveyor called by the defendants as an expert witness, explained that double dotted lines on a map designate a traveled way or road, while a single CT Page 10829 dotted line indicates a path (Tr. p. 103).
Although testifying that he observed the road to be between 7 and 10 feet wide in 1991, when he drove up the road in a S-10 Blazer, Ryan testified that the road, as it bisects the Pender property, scales to 8 feet wide, according to the Rapp Map (Tr. p. 115).
Ryan also examined the agreement with the Kellogg Point Residents (Exhibit 4), and compared that agreement with the map.
Exhibit 4 contains a paragraph "SECOND," which gave to Burton S. Sherwood "the right to pass and repass for all purposes whatsoever over the existing roadway 14 feet in width from a point marking the common bound of land of the Estate of Stanley T. Kellogg, land formerly of Rosalind D. Martel, now of said Sherwood, and the 440 foot contour line of The Connecticut Light Power Company's Rocky River Datum, over and across land of the Kellogg Point Residents to a point on land of Louise F. Taylor, and thence in a Northerly direction in a course marked by iron pipes to other land of said Sherwood at a point approximately 100 feet Southerly of land of Neil G. Hayes."
In the opinion of Ryan, the road referred to in the paragraph is the Wood Road on the Rapp Map.
While conducting field work, the surveyor located an iron pipe at a location where the Wood Road begins a generally Northerly path toward Lot 6 (Tr. p. 100).
Ryan also stated that the land referred to in the fifth paragraph of Exhibit 4, land "Northerly and Northwesterly of land of Helen O. Hegeman," is the land designated Lot 6 on the Rapp Map.
The deed from Burton F. Sherwood to David A. Laveson (Exhibit 1), which conveyed Lot 7 and Lot 6A on the Rapp Map, made specific reference to the covenants and restrictions in Exhibit 4.
The plaintiffs, John and Mary Pender, took title to the property by way of an Executor's Deed (Exhibit 2), and mortgaged the property in 1971 (Exhibit 3). In both the Executor's Deed and the mortgage instrument, the covenants and restrictions are mentioned. CT Page 10830
There is no question that the plaintiffs, John and Mary Pender, took title to their property subject to the covenants in Exhibit 4.
It is equally clear that the defendants, Joseph and Christina Matranga, are the successors of Burton F. Sherwood (Exhibits A, B and C).
The Matrangas claim an express easement giving them the right to pass over the Pender property, based upon the 1953 Rapp Map (Exhibit 5) and covenants in the 1944 agreement between Burton F. Sherwood and the Kellogg Point Residents (Exhibit 4).
The Penders contend that Wood Road is a mere foot path, and cannot be expanded or improved to accommodate vehicular traffic.
The testimony at trial was contradictory and mostly anecdotal.
Witnesses testified that the "Wood Road" was a foot path both before and after the recording of the 1953 map.
Others testified that the road was wide enough to accommodate automobile travel before the defendant, Chris Wallace, began building the road on behalf of the Matrangas.
Having abandoned any claim for money damages, the plaintiffs seek a declaratory judgment determining the width of Wood Road through the Pender property.
They also seek to restrain the defendants from trespassing upon and damaging their property.
The court is also asked to enjoin the construction of a dwelling on Lot 6.
 EXPRESS EASEMENT OVER PENDER PROPERTY
Following the hearing on the issuance of a temporary injunction, the Honorable Morton I. Riefberg, in an extensive opinion rendered in this case, and the companion case ofMcEachern v. Matranga, et al. (No. 319038), found that Wood Road, as shown on Exhibit 4, was 8 feet in width in 1952, and was used for limited automobile traffic. CT Page 10831
This finding is consistent with the testimony of surveyor, David Ryan, who declared that Wood Road, using a scale applied to the Rapp Map, measured 8 feet through the Pender property (Tr. p. 115).
The hearing before Judge Riefberg was limited to the plaintiffs' request for a temporary injunction. A temporary injunction is designed to preserve the status quo, until the rights of the parties can be finally determined after a full hearing on the merits. Griffin Hospital v. Commission onHospitals, 196 Conn. 451, 457 (1985).
A decision regarding temporary injunctive relief necessarily involves the application of equitable principles in adjusting the rights of the parties, until a final determination on the merits can be obtained. Stocker v. Waterbury, 154 Conn. 446, 451 (1967). The need to show irreparable loss unless the status quo is preserved, has often been mentioned as a key factor in the decision. Covenant Radio Corporation v. Ten Eighty Corporation,35 Conn. Sup. 1, 3 (1977).
Balancing of the equities is mandatory, unless it is quite clear that a party is without legal right. Olcott v. Pendleton,128 Conn. 292, 294 (1941).
Testimony has revealed that the actual road surface was between 7 and 10 feet in width before Wood Road was improved by the defendant, Chris Wallace.
In issuing the temporary injunction, Judge Riefberg properly focused upon the phrase "the existing wood road" language in the agreement between Burton F. Sherwood and the Kellogg Point Residents.
At the time of the temporary injunction hearing, the plaintiffs claimed, as they did at trial, that Wood Road was merely a foot path.
The defendants countered by arguing that Wood Road provided an easement of ingress and egress to Lot 6 on the Rapp Map and its width was not to be determined by either the Rapp Map or the condition of the road prior to the work performed by Chris Wallace. CT Page 10832
Therefore, to have allowed continuing work outside the 8 foot area, 4 feet on each side of the center line, would have upset the status quo, and effectively denied the plaintiffs a meaningful opportunity to be heard on the merits.
Because a temporary injunction is interlocutory in character, it is issued before the pleadings are closed and before all issues have been joined. Only when all issues are properly joined, can a permanent injunction issue. Cavalli v. McMahon,174 Conn. 212, 215 (1978).
On page 17 of their brief, the plaintiffs acknowledge: "In this case, we are dealing with the express reservation limited and defined by deed."
They further state that the easement is "limited by the express language in the deed from Sherwood to Laveson. . . ."
That deed (Exhibit 1) is specifically subject to: "Covenants, conditions and restrictions more fully set forth in a certain agreement between John S. Carpenter, et als. and Burton F. Sherwood, which agreement is recorded in the New Fairfield Land Records."
The agreement (Exhibit 4) reserves to the grantor the "right to pass and repass for all purpose whatsoever over the existing roadway 14 feet in width. . . ."
A right of way created by grant is not as limited as one created by prescription. Lichteig v. Churinetz, 9 Conn. App. 406,410 (1986).
The deed from Sherwood to Laveson refers both to the Rapp Map (Exhibit 5) and the agreement with the Kellogg Point Residents (Exhibit 4). Those documents are therefore incorporated and the rights conferred are memorialized into the deed. Powers v.Grenier Construction, Inc., 10 Conn. App. 556, 559 (1987).
The phrase "for all purposes whatsoever" is general, and without any restriction as to the use of the right to pass and repass. Reasonable uses of a right are not limited to those to which the land was being put when the right was created. Birdseyv. Kosienski, 140 Conn. 403, 412-13 (1953).
Unlike Wilson v. DeGenaro, 36 Conn. Sup. 200, 203-04 (1979) CT Page 10833 (affirmed and opinion adopted, 181 Conn. 480, 482 (1980)), we are not concerned with an easement containing the words "as now laid out," as a limitation on an express grant.
Wilson makes no mention of an easement, the dimensions of which were designated in feet, or meets and bounds. Nor was there any evidence indicating that the grantor intended the land to be fully developed. Wilson v. DeGenaro, supra at 205.
Here, the agreement (Exhibit 4) uses the phrase "over the existing roadway 14 feet in width," even though no testimony indicated that the Wood Road was actually 14 feet prior to or subsequent to 1953.
Furthermore, Exhibit 4 specifically refers to the possibility of developing Lot 6. The grantor, Burton F. Sherwood, was a prominent real estate developer.
To limit the easement to the width of Wood Road in 1953 or 1991, would be to ignore, and give no effect whatever to the phrase "14 feet in width" specified by the grantor.
The meaning and effect of a reservation contained in a deed, is to be determined by the intent as expressed in the instrument, considering all relevant provisions, and reading it in light of all surrounding circumstances. Kelly v. Ivler, 187 Conn. 31, 39
(1982).
Here, we are presented with a general grant of authority to pass and repass "for all purposes whatsoever."
Lot 6 on the Rapp Map is almost inaccessible by any other means, and contains 10 acres overlooking Candlewood Lake.
The testimony of both David Ryan and Christina Matranga affirmed that a steep grade renders access across Lot 14 unfeasible.
Since the actual road was approximately 8 feet in width in 1952, according to reliable testimony, one must conclude that either Burton F. Sherwood had the foresight to reserve 14 feet as an easement in the event access to this 10 acre parcel was necessary for development, or he grossly miscalculated the width of the existing road by a full 6 feet prior to signing the agreement with the Kellogg Point Residents (Exhibit 4). CT Page 10834
Because the phrase "for all purposes whatsoever" is broad and general language, the grant is to be construed as broad enough to permit any use reasonably connected to the use of the land.Lichteig v. Churinetz, supra at 410.
Applying these facts to the question of the width of the easement through the property of John and Mary Pender, it is found that Burton Sherwood reserved an express easement of 14 feet, as a means of ensuring access to Lot 6, and leaving open the possibility of future development of the property.
As the owners of the easement, the Matrangas may repair the easement and do whatever is reasonably necessary to make it suitable and convenient for their use. Nichols v. Peck,70 Conn. 439, 441 (1898): Kuras v. Kope, 205 Conn. 332, 343 (1987).
It is found that constructing a 12 to 14 foot access way, under the existing circumstances, will not burden the plaintiffs' property unnecessarily. Repairs and improvements do not unreasonably increase the burden on the servient tenement.
 EASEMENTS BY NECESSITY AND IMPLICATION
In addition to the express easement, the Matrangas enjoy an easement by necessity and an easement by implication over the Pender property.
The common law rule regarding easements by necessity presumes that no grantor would convey a portion of his property and thereby deprive himself of the enjoyment of the remainder.Collins v. Prentice, 15 Conn. 38, 44 (1842); Hollywyle Assn.,Inc. v. Hollister, 164 Conn. 389, 398 (1973).
In order to obtain an easement by necessity, the defendants must show that title once vested in a single grantor, severance of the unity of title created an inaccessible parcel, and reasonable necessity exists justifying the use of the land.
Absolute necessity is not required. The necessity must only be a reasonable one. D'Amato v. Weiss, 141 Conn. 713, 717 (1954);Marshall v. Martin, 107 Conn. 32, 37 (1927).
Here, there is no question that Burton F. Sherwood was the common grantor. The question presented, therefore, is whether the CT Page 10835 10 acre parcel, Lot 6, was rendered inaccessible, except over the land now owned by John and Mary Pender.
Testimony revealed that Lot 6 is not accessible from Lot 14 on the Rapp Map, or over any other road. The topography, except over the Wood Road, effectively denies access to Lot 6.
The grantor clearly did not intend this bizarre result, as evidenced by the agreement with the Kellogg Point Residents (Exhibit 4).
Furthermore, an easement limited to 8 feet would make vehicular traffic difficult, and would not allow for the type of traffic necessary for construction activities.
It is therefore found that the plaintiffs enjoy an easement of necessity 12 feet in width, sufficient according to the testimony to permit a safe and adequate driveway. This would provide for necessary access to Lot 6.
The facts as presented also support a finding that the defendants enjoy an easement by implication over Lots 6A and 7.
Any such easement is, however, limited to substantially the same condition in which it appeared when the grant was made.Rischall v. Bauchmann, 132 Conn. 637, 643 (1946).
This would allow for limited automobile traffic over the right of way designated as Wood Road on the Rapp Map.
Because Wood Road, as it existed in 1953, was 8 feet wide, an easement by implication is found in favor of the defendants, Joseph and Christina Matranga.
The width of the easement by implication is found to be 8 feet.
 NO VIOLATION OF RESTRICTIVE COVENANT FOUND
In the agreement between Burton F. Sherwood and the Kellogg Point Residents (Exhibit 4), Sherwood agreed as follows: "FIFTH: Said Sherwood covenants and agrees that there shall not be built or erected upon land owned by him lying Northerly and Northwesterly of land of Helen O. Hegeman, more than eight (8) one family dwelling houses, together with garages for the use of CT Page 10836 the owners thereof."
Ryan concluded, based upon his examination of the documents and his field work, that the land referred to in the fifth paragraph is Lot 6 on the Rapp Map.
Therefore, since the covenant applies to Lot 6, and no dwellings currently exist on Lot 6, there is no basis for the issuance of an injunction prohibiting the Matrangas from constructing a dwelling on Lot 6.
 ORDERS AND FINDINGS
The following findings and orders are issued:
1. IT IS FOUND that the right of way over the property of John and Mary Pender, Lots 6A and 7 on the Rapp Map, based upon the express easement contained in the deeds, covenants and agreements, is 14 feet, in the area of the Wood Road as shown on the Rapp Map (Exhibit 5).
2. IT IS FOUND that the plaintiffs, Joseph and Christina Matranga, enjoy an easement of necessity over the property of John and Mary Pender, of 12 feet, in the area of the Wood Road as shown on the Rapp Map (Exhibit 5).
3. IT IS FOUND that the plaintiffs, Joseph and Christina Matranga, enjoy an easement by implication over the property of John and Mary Pender, 8 feet in width, in the area of the Wood Road as shown on the Rapp Map (Exhibit 5).
4. IT IS FOUND that the plaintiffs have abandoned any claim for money damages as requested in their prayer for relief.
5. IT IS FOUND that there is no basis in law or fact to justify the issuance of an injunction, as requested by the plaintiffs, Nancy Simmons and Dorothy Kemp, prohibiting the construction of a dwelling by the plaintiffs, Joseph and Christina Matranga, on Lot 6, as shown on the Rapp Map (Exhibit 5).
6. IT IS FOUND that the defendants, Joseph and Christina Matranga, as the holders of an express easement, an easement of necessity and an easement by implication, may construct, maintain, and repair each of the easements. CT Page 10837
7. IT IS FOUND that the plaintiffs, Joseph and Christina Matranga, as the holders of an express easement of 14 feet, reserved by the common grantor, Burton F. Sherwood, may construct, maintain and repair the easement to a point 7 feet each side of the center line of Wood Road as shown on the Rapp Map (Exhibit 5).
8. IT IS FOUND, based upon the testimony, exhibits and the extent of the express easement in favor of the defendants, Joseph and Christina Matranga, that no trespass was committed by the Matrangas, or the defendant, Chris Wallace, for which nominal damages could be awarded.
Judgment may therefore enter in favor of the defendants.
Radcliffe, J.