**Peter R. JOHL**

v.

**John H. JOHL, Janet P. Johl Weissman, Robert E. Weissman and Town of Groton.**

Civ. No. H-79-327.

United States District Court, D. Connecticut.

Feb. 23, 1981.

Peter R. Johl, New York City, pro se.

Keith A. Rubenstein, Goldstein & Peck, Walter A. Flynn, Jr., Bridgeport, Conn., for John H. Johl, Janet P. Johl Weissman & Robert Weissman.

Joseph E. Moukawsher, New London, Conn., for Town of Groton.

**RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

CLARIE, Chief Judge.

The plaintiff, acting pro se, has alleged violations of his rights under the fifth and

fourteenth amendments of the United States Constitution. He has also claimed recovery under certain federal statutes, as well as under the "Constitution of the State of Connecticut and the laws of the State of Connecticut." Defendants John H. Johl, Janet P. Johl Weissman, and Robert E. Weissman have moved for judgment on the pleadings under Federal Rules of Civil Procedure 12(c) or, in the alternative, for summary judgment as provided in Federal Rules of Civil Procedure 56. Defendant Town of Groton joined in this motion. The motion is granted.

### Jurisdiction

The Court has jurisdiction in this action, based upon the allegations of the complaint, pursuant to 28 U.S.C. §§ 1331(a), 1332(a)(1).

### Facts

The procedural history of this case is long and complex. The causes of action alleged in the case at bar derive from a condemnation action which occurred more than five years ago. The plaintiff, together with his brother and sister, owned property in the Town of Groton. On August 4, 1975, a certificate of taking was filed by the town, and the property was condemned for $98,-400. The three owners appealed that assessment to the Connecticut Superior Court, where it was increased to more than $400,-000. The plaintiff appealed the latter finding to the Connecticut Supreme Court in October 1976. The plaintiff's brother and sister opposed the Supreme Court appeal and, on February 16, 1978, their motion to dismiss the appeal for failure to prosecute with due diligence was granted by the Connecticut Supreme Court. The plaintiff filed a motion to reargue, according to his memorandum of November 20, 1980, on March 15, 1978. This motion was denied on April 4,

1978. At this point the litigation was concluded in the Connecticut courts. *Johl v. Town of Groton,* No. 79–301 at 3–4 (D.Conn. Nov. 14, 1979). However, the plaintiff then filed a Motion to Reargue the Motion to Reargue. This was also dismissed, as were many similar, subsequent motions which he filed over the next twelve months. The plaintiff claims that his motion to reargue the motion to reargue, and all its progeny, acted to keep his case "pending" before the Connecticut Supreme Court. Despite his opinion, the other parties to the case were of the belief that the case was concluded, that the Superior Court judgment was no longer stayed, and that they were therefore permitted to complete the distribution of the $400,000 condemnation award. This distribution was effected on or about June 15, 1978.[1]

It was this distribution which generated the causes of action now before the Court. The plaintiff claims, among other allegations, that the distribution while the case was still "pending" had the following effects: (1) the transfer of funds while an action was pending in the Connecticut Supreme Court was a violation of the State Supreme Court Rules and the United States Constitution; (2) the plaintiff was incarcerated pursuant to a contempt citation issued by the Family Court of the State of New York. Apparently, the defendants' attorneys, and other parties, represented to that court in June 1978 that nothing involving the plaintiff's condemnation award was then pending in the Connecticut Supreme Court. The Family Court was, at least in July 1978, conducting child support proceedings involving the plaintiff; (3) the defendant John H. Johl, an Air Force Reserve Officer and New Jersey Town Mayor, accepted a part of the condemnation award in violation of the Constitution; (4) oral and written statements were made by the de-

1. On May 23, 1979, the plaintiff attempted to remove his case from the state courts to the Federal District Court. He is of the opinion that the petition for removal "froze" the case in Federal Court, and that it was therefore still pending after the petition for removal was filed. However, on November 14, 1979, this Court denied the petition for removal on the

basis that the litigation had concluded in the state court prior to the filing of the removal petition. This ruling was affirmed on April 22, 1980, by the Second Circuit Court of Appeals. The plaintiff sought to appeal to the United States Supreme Court, but the petition for a writ of certiorari was denied on January 12, 1981.

fendants, and other parties, which were in violation of certain federal criminal statutes.

### Discussion of the Law

■ Some of the points raised by the plaintiff are patently unsupportable. First, the plaintiff has never clearly alleged any violation of the Connecticut Constitution. Therefore, the motion for judgment on the pleadings, as to that issue, is granted.

■ Second, the plaintiff has alleged breach of three federal criminal statutes, 18 U.S.C. §§ 1001, 1010, and 1012. These allegations appeared, not in his complaint or his amended complaint, but in his More Definite Statement, filed February 4, 1980. It is clear that these statutes cannot serve to provide the plaintiff, a private citizen, with a cause of action in this civil case. 28 U.S.C. § 547(1) (the United States Attorney shall prosecute all offenses against the United States); *Dresser Industries, Inc. v. United States,* 596 F.2d 1231, 1237 (5th Cir. 1979); *United States v. Stone,* 8 F. 232, 261 (C.C.W.D.Tenn.1881). Therefore, the motion for judgment on the pleadings, as to this issue, is granted.

■ Third, the constitutional violations alleged against the private defendants must fall because the fifth and fourteenth amendments do not apply to, or restrict, private persons. *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483, 487 (9th Cir.1974). Defendant John H. Johl, although he may be an Air Force Reserve Officer and/or the mayor of a town in New Jersey, was not alleged to have acted in either of those capacities when he accepted his share of the condemnation award.

In a Response to The Motion For Judgment On The Pleadings, filed November 20, 1980, the plaintiff claims that the Town of Groton's condemnation was not for a "public use." However, this claim was not stated in the plaintiff's More Definite Statement (Feb. 4, 1980), in his amended complaint, or in his complaint. Nor was it raised in the Connecticut Superior or Supreme Court proceedings. It cannot be raised now, more than five years after the condemnation took place. Conn.Gen.Stat. § 52-577. Therefore, the motion for judgment on the pleadings, as to these constitutional claims, is granted.

■ The fourth body of the plaintiff's allegations, breach of Connecticut Supreme Court Rules, hinges upon his belief that there was an action pending in the Connecticut Supreme Court after April 4, 1978.[2] The essence of the plaintiff's claim is that his repeated motions to reargue were timely filed pursuant to Connecticut Supreme Court Rule § 703. This rule provides, in pertinent part, that "A motion for reargument will not be entertained unless filed in writing within ten days from the date when the decision is announced." The plaintiff claims that his filing and refiling of motions to reargue kept the case "locked in a pendency situation . . . ." Therefore, he argues, any distribution of the condemnation award was in violation of the Stay of Proceedings provision contained in Connecticut Supreme Court Rule § 704.[3]

---

**2.** As was noted, *supra,* it is clear that this issue was resolved adversely to the plaintiff in this Court's ruling of November 14, 1979. *Johl v. Town of Groton,* No. 79-301, at 3-4 (D.Conn. Nov. 14, 1979). Thus, the claim is barred by collateral estoppel. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation"). The present review of the pro se plain-

tiff's claim is designed to illustrate the reasons for the conclusions reached in this case. Such review is not intended to add to, or subtract from, the ruling of November 14, 1979.

**3.** Supreme Court Rule § 703 (now cited as Rule § 3111A) operates in tandem with Supreme Court Rule § 704 (now cited as Rule § 3112), which provides, in part, that "all proceedings to enforce or carry out the judgment shall be stayed until the time for filing the motion has expired, and, if the motion is filed, until its disposition, and if it is granted, until the appeal is finally determined."

It is quite clear that the plaintiff's interpretation of Supreme Court Rule § 703 is in error, and that the word "decision" in Rule § 703 refers only to the decision in the principal case on appeal.[4] The plaintiff has stated that "There is no contention anywhere that a litigant can keep a case open indefinitely ...." However, if the plaintiff's view of Rule § 703 were accepted, a litigant would, indeed, be empowered to keep a case open interminably, simply by filing a motion to reargue every ten days. Under Rule § 704, then, any judgment in the case could never be carried out or enforced because such proceedings would be stayed until the disposition of each motion to reargue.

Such a reading of Rule § 703 has several flaws, not the least of which is that it would permit an unsuccessful litigant to bar his opponent from achieving whatever benefit was due him under a Supreme Court ruling. Thus, that court's ruling would be rendered a nullity, a result which could not be contemplated by Rule § 703. It is well-settled that the goal of finality in judicial review is critical to our adjudicative process. The very object for which civil courts have been established.

"is to secure the peace and repose of society by the settlement of matters capable of judicial determination. [Finality] is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them." *Southern Pacific Railroad Co. v. United States,* 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).[5]

In addition, the Court rejects the plaintiff's apparent conclusion that the filing of a document serves to keep an action pending.[6] It is clear that the plaintiff repeatedly filed motions to reargue with the Connecticut Supreme Court long after the action was no longer pending. These filings, already identified as the central cause of many of the plaintiff's alleged injuries, were improper and should never have taken place. This is not to say that the Supreme Court Clerks were incorrect in accepting the proffered documents. It is a part of the duty of any clerk of the court to advise a litigant as to when filing appears to be improper under the rules of the jurisdiction. However, the clerk's recommendation does not rise to the level of a judicial interpretation of any procedural rule.[7] If a litigant,

---

**4.** Connecticut Supreme Court Rule § 703 has yet to be interpreted by any Connecticut court, so far as can be determined. This is due, in part, to the infrequency with which motions to reargue have been granted. Moller & Horton, Supreme Court Rules & Forms 121 (4th ed. 1980).

**5.** This same point was reviewed by this Court in the case of *Tucker v. Neal:*

"If an otherwise final judgment could be deprived of finality by the lodging of an appeal from a post-judgment order denying a litigant an extension of time within which to appeal that judgment, then there is no logical reason why the finality of a judgment should not also be made to await the outcome of appellate review of other post-judgment orders. If this were the case, however, the strong public policy favoring the termination of litigation through the finality of judgments, see *e.g., Baldwin v. Iowa State Traveling Men's Association,* 283 U.S. 522, 524–526, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931), would be far too easily frustrated by the simple filing of a post-judgment motion. Logically, a judgment could never truly be final as long as the possibility existed that a post judgment motion might be filed, since the appeal from any ruling on such a motion would be deemed to have enmeshed the underlying judgment itself in an appeal, thereby depriving it of finality. The law wisely rejects the plaintiff's hypothesis." *Tucker v. Neal,* No. H–8, at 11 (D.Conn. Mar. 6, 1974).

**6.** "An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of." *Mackenzie v. A. Engelhard & Sons Co.,* 266 U.S. 131, 45 S.Ct. 68, 69 L.Ed. 20 (1924). The improperly filed motions were, themselves, pending until they were decided. The plaintiff's case, however, was no longer pending once the first motion to reargue was denied on April 4, 1978.

**7.** The limitation on a court clerk's power is clear.

"I suppose it may be true that the clerk of the court, who is sworn to keep a true record, may, whether the court be in session or has

particularly a pro se litigant,[8] insists on filing a document, the clerk's office must accept, docket, and file that document.[9] Thus, the act of filing does not, of itself, confer legitimacy on an improperly filed motion.

The plaintiff's claims, perched as they are on his interpretation of Rule § 703, have the fragility of a house of cards. Since it has been established that his view of Rule § 703 is erroneous, his causes of action must disappear. The private defendants' attorneys were not acting improperly when they distributed the condemnation award after April 4, 1978,[10] the private defendants were not acting improperly when they accepted their share of the award, and the Town of Groton was not acting improperly when it transferred the award to the defendants' attorneys to be held by them for distribution. Finally, neither the Supreme Court Clerks, nor any other party, were acting improperly when they issued letters or documents to the effect that the plaintiff's case was no longer pending, in the Connecticut Supreme Court, after April 4, 1978.

*Conclusion*

The plaintiff has had his day in court.[11] He has failed to state a claim upon which relief can be granted. The motion for judgment on the pleadings, here treated as a motion for summary judgment, is granted. SO ORDERED.

---

adjourned, perfect and if necessary amend his record, that it may agree with the fact and be a true record. *But a judgment that is entered as it was in fact pronounced ... is absolutely unamendable by the clerk ....*" *Sanford v. Sanford,* 28 Conn. 6, 24 (1859) (emphasis added).

8. The courts of the State of Connecticut, as well as the Federal Courts, have a tradition of allowing considerable latitude with regard to the efforts of pro se litigants.
"A party who; unskilled in such matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, is very ill-advised and assumes a most difficult task. Our courts, however, have always been lenient toward such an [*sic*] one, relaxing the rules wherever it can be done with propriety ...." *O'Conner v. Solomon,* 103 Conn. 744, 745, 131 A. 736 (1926).
*See Hartford National Bank & Trust Co. v. DiFazio,* 177 Conn. 34, 39, 411 A.2d 8 (1979). *See also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Fries v. Barnes,* 618 F.2d 988, 989 (2d Cir.1980); *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir. 1976).

9. The effect of this policy may be, as in this case, occasionally lengthy, confusing, and unnecessary litigation. No other policy is advocated, however, in order to preserve fully the essential right of an individual to obtain judicial review.

10. At least, the distribution was appropriate insofar as it reflected the law firm's belief that litigation in the Connecticut Supreme Court was concluded.

11. Indeed, the plaintiff has had years in court. Despite the essentially simple legal principles involved, it appears that, as of this date, he has initiated five separate cases in Connecticut Superior Court, one appeal to the Connecticut Supreme Court, two actions in Federal District Court, two appeals to the Second Circuit Court of Appeals, and one petition for writ of certiorari to the United States Supreme Court. He has filed dozens of affidavits, proposed orders, pleadings, motions, and memoranda. He has appeared before this Court for oral argument, including the argument delivered in opposition to the motion now before the Court, on no fewer than six occasions. This litigation has arisen, in its entirety, from the condemnation of August 5, 1975. Whatever the plaintiff lacks in legal sophistication has been more than balanced by his industry.